Albert N. Kennedy, OSB No. 821429 (Lead Attorney)
    Direct Dial:  503.802.2013
    Facsimile:  503.972.3713
    E-Mail:  albert.kennedy@tonkon.com
Michael W. Fletcher, OSB No. 010448
    Direct Dial:  (503) 802-2169
    Facsimile:  (503) 972-3867
    E-Mail:  michael.fletcher@tonkon.com
TONKON TORP LLP
888 SW Fifth Avenue, Suite 1600
Portland, OR 97204-2099

        Attorneys for Debtor

UNITED STATES BANKRUPTCY COURT

DISTRICT OF OREGON

| | |
|---|---|
| In re | Case No. 19-30223-tmb11 |
| Western Communications, Inc. | **DEBTOR'S DISCLOSURE STATEMENT (MAY 22, 2019)** |
| Debtor. | |

## 1.    INTRODUCTION

On January 22, 2019 (the "Petition Date"), Western Communications, Inc., debtor and debtor-in-possession ("Debtor"), filed a voluntary petition for relief under Chapter 11 of Title 11 of the United States Code (the "Bankruptcy Code").  On May 22, 2019 Debtor filed its Plan of Liquidation (the "Plan") with the Bankruptcy Court.  A copy of the Plan is attached hereto as **Exhibit 1**.  Debtor is seeking acceptance of the Plan by Debtor's creditors.  A ballot has been enclosed with this Disclosure Statement for use in voting on the Plan.  Debtor believes confirmation of the Plan is in the best interest of Debtor's creditors and asks those parties entitled to vote to vote to accept the Plan.

**Page 1 of 21** -    DEBTOR'S DISCLOSURE STATEMENT (MAY 22, 2019)

## 2. PURPOSE OF THE DISCLOSURE STATEMENT

The purpose of this Disclosure Statement is to provide you with adequate information to enable you to make an informed judgment concerning whether to vote for or against the Plan. Please review this Disclosure Statement and the Plan and, if appropriate, consult with counsel about the Plan and its impact on your legal rights before voting on the Plan. Capitalized terms used but not defined in this Disclosure Statement shall have the meanings assigned to such terms in the Plan or the Bankruptcy Code.

This Disclosure Statement has been approved by Order of the Bankruptcy Court as containing adequate information to permit parties in interest to make an informed judgment as to whether to vote to accept or reject the Plan. The Bankruptcy Court's approval of this Disclosure Statement, however, does not constitute a recommendation by the Bankruptcy Court either for or against the Plan.

This Disclosure Statement is submitted in accordance with Section 1125 of the Bankruptcy Code and Bankruptcy Rule 3016. The description of the Plan contained in this Disclosure Statement is intended as a summary only and is qualified in its entirety by reference to the Plan itself. This Disclosure Statement does not attempt to summarize or discuss each and every section of the Plan. If any inconsistency exists between the Plan and this Disclosure Statement, the terms of the Plan are controlling. This Disclosure Statement may not be relied on for any purpose other than to determine how to vote on the Plan.

This Disclosure Statement has been prepared by Debtor in good faith based upon information available to Debtor and information contained in Debtor's books and records. The information concerning the Plan has not been subject to a verified audit. The statements contained in this Disclosure Statement are made as of the date hereof unless another time is specified herein, and the delivery of this Disclosure Statement shall not imply there has been no change in the facts set forth herein since the date of this Disclosure

**Page 2 of 21** - DEBTOR'S DISCLOSURE STATEMENT (MAY 22, 2019)

1  Statement and the date the material relied on in preparation of this Disclosure Statement was

2  compiled.

3  Nothing contained herein shall constitute an admission of any fact or liability

4  by any party, or be admissible in any proceeding involving Debtor or any other party.

5  **3.  BRIEF EXPLANATION OF CHAPTER 11**

6  Chapter 11 of the Bankruptcy Code is the principal reorganization provision

7  of the Bankruptcy Code.  A debtor may use Chapter 11 to facilitate an orderly liquidation of

8  the debtor's assets and an efficient distribution to the debtor's creditors.

9  The formulation and confirmation of a plan is the principal purpose of a

10  Chapter 11 case.  A plan sets forth a proposed method of compensating the debtor's creditors.

11  Chapter 11 does not require all holders of claims to vote in favor of the plan for the

12  Bankruptcy Court to confirm the plan.  However, the Bankruptcy Court must find that the

13  plan meets a number of statutory tests before it may confirm, or approve, the plan.  These

14  tests are designed to protect the interests of holders of claims who do not vote to accept the

15  plan, but who will nonetheless be bound by the plan's provisions if it is confirmed by the

16  Bankruptcy Court.

17  **4.  BRIEF SUMMARY OF THE PLAN**

18  A copy of the Plan is attached as **Exhibit 1**.  All descriptions of the Plan in

19  this Disclosure Statement are qualified in their entirety by reference to the Plan.  A more

20  detailed summary of the Plan is set forth later in this Disclosure Statement.

21  The Plan is a liquidating plan.  Debtor is in the process of marketing its assets

22  for sale and anticipates selling substantially all of its assets. and distributing or retaining the

23  proceeds from such sales, pursuant to a series of sales to be approved by the Bankruptcy

24  Court after appropriate notice and hearing.  To the extent Debtor's assets have not been sold,

25  and the proceeds distributed, pursuant to Bankruptcy Court order prior to the Effective Date,

26

**Page 3 of 21** -    DEBTOR'S DISCLOSURE STATEMENT (MAY 22, 2019)

1 Debtor will liquidate the remaining assets and distribute the net sales proceeds in accordance

2 with the Plan.

3         The Plan provides that all Allowed Secured Claims and Allowed

4 Administrative Expense Claims and Priority Tax Claims will be paid in full on the Effective

5 Date. The Effective Date will be the first day after all conditions to effectiveness have been

6 satisfied or waived, as set forth in the Plan.

7         Holders of Allowed General Unsecured Claims will receive on account of

8 such claims one or more pro rata distributions of available cash when and if sufficient funds

9 are available to make meaningful distributions.

10         All Equity Interests will be cancelled as of the Effective Date.

11         Creditors holding Allowed Secured Claims and Property Tax Claims will be

12 paid from the proceeds of the Collateral securing their Claims.

13 **5. DEBTOR**

14         Debtor is a privately-held Oregon corporation headquartered in Bend, Oregon.

15 Debtor is a newspaper, niche publishing, printing, and digital media company consisting of

16 seven community newspapers serving markets across Oregon and northern California. These

17 papers include *The Bulletin* in Bend, Oregon; the *Redmond (OR) Spokesman*; *The Union*

18 *Democrat* in Sonora, California; *The Observer* in La Grande, Oregon; the *Baker City (OR)*

19 *Herald*; the *Curry Coastal Pilot* in Brookings, Oregon; and the *Del Norte Triplicate* in Crescent

20 City, California. Debtor also owns six commercial buildings used in connection with its

21 newspaper business.

22 **6. SIGNIFICANT POST-PETITION EVENTS**

23       6.1   <u>Retention of Professionals</u>. Pursuant to a series of applications and orders,

24 Debtor obtained authorization from the Bankruptcy Court to employ various professionals in

25 the Case. These professionals include, among others, (a) Tonkon Torp LLP as attorneys for

26 Debtor; (b) The Mountain Group as consultant; (c) Grove, Mueller & Swank, P.C. as

**Page 4 of 21** -   DEBTOR'S DISCLOSURE STATEMENT (MAY 22, 2019)

accountants; (d) Dirks, Van Essen, Murray & April ("DVE") as sale agent to assist with the sale of the newspapers; and (e) various real estate brokers to assist with the sale of the commercial buildings.

6.2     Post-Petition Operations; Use of Cash Collateral.  Pending the sale of its assets, Debtor has continued to operate in the ordinary course, using the cash collateral of Debtor's secured lender, Sandton Credit Solution Master Fund III, LP ("Sandton"), pursuant to a series of cash collateral orders approved by the Bankruptcy Court.

6.3     Sale of Union Democrat Property.  Debtor caused its wholly-owned subsidiary, The Union Democrat, which is not in bankruptcy, to complete the sale of commercial property located in Sonora, California for $1,050,000.  Substantially all of the net proceeds were distributed to Sandton to pay down the debt owing by Debtor to Sandton.

6.4     Marketing of Newspapers

Debtor, with the assistance of DVE, continues to market for sale each of its newspaper businesses.  Among other marketing efforts, Debtor and DVE identified and contacted 48 potential strategic purchasers.  Thirty-one parties expressed an indication of interest, with 29 signing non-disclosure agreements.  These parties were provided access to Debtor's virtual data room, and five have toured Debtor's facilities and engaged in follow-up discussions and negotiations.  Debtor and DVE are in the process of negotiating deal terms with a number of these potential purchasers.  Debtor anticipates seeking Bankruptcy Court approval in June 2019 to complete one or more sales of its newspaper businesses in June or July 2019.  Any sale, and distribution of proceeds, will occur only after appropriate notice and Bankruptcy Court approval.

6.5     Marketing of Commercial Buildings.  Debtor, with the assistance of its various real estate brokers, continues to market for sale each of its commercial properties.  Debtor anticipates completing the sales of its commercial properties by October 2019.  Any

**Page 5 of 21** -    DEBTOR'S DISCLOSURE STATEMENT (MAY 22, 2019)

**Tonkon Torp LLP**
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

sale, and distribution of proceeds, will only occur after appropriate notice and Bankruptcy Court approval.

## 7. CLASSIFICATION AND TREATMENT OF CLAIMS UNDER THE PLAN

Below is a general summary of the Plan's classification and treatment of Claims. It is intended as a general summary only and is qualified in its entirety by reference to the Plan.

7.1    Unclassified Claims. Administrative Expense Claims and Priority Tax Claims are not classified under the Plan.

An Administrative Expense Claim is any Claim entitled to the priority afforded by Section 507(a)(2) of the Bankruptcy Code. Under the Plan, each holder of an Administrative Expense Claim will receive payment of such Claim in full in Cash on the later of (a) the Effective Date or (b) the date on which such Claim becomes an Allowed Claim, except to the extent that the holder of any such Administrative Expense Claim has agreed to a different treatment of such Claim; provided, however, that Administrative Expense Claims representing obligations incurred in the ordinary course of business by Debtor during the Chapter 11 Case shall be paid by Debtor in the ordinary course of business and in accordance with any terms and conditions of the particular transaction, and any agreements relating thereto. Debtor estimates that Administrative Expenses, exclusive of commissions, may approach $1,000,000.

A Priority Tax Claim is a claim of a governmental unit of the kind entitled to priority under Section 507(a)(8) of the Bankruptcy Code. Under the Plan, each holder of a Priority Tax Claim will receive payment of such Claim in full in Cash on the later of (a) the Effective Date, or (b) the date on which such Claim becomes an Allowed Claim. The IRS has filed a claim for $1,275,148.82, to be offset by $414,776.64 for backup withholding paid to the IRS on Debtor's behalf by Debtor's credit card processor, First Data.

**Page 6 of 21** -    DEBTOR'S DISCLOSURE STATEMENT (MAY 22, 2019)

7.2     Classified Claims.  The Plan divides all Claims (other than the unclassified Claims addressed above) into the following Classes.

7.2.1   Class 1 (Sandton).  Class 1 consists of the Allowed Secured Claim of Sandton.  Sandton has a first priority security interest in all or substantially all of Debtor's assets.  Sandton will retain its security interest in its collateral with the same priority that it had as of the Petition Date.

Sandton was owed approximately $19 million dollars as of the Petition Date.  Since the Petition Date, Sandton has received $924,469.32 from the sale of the warehouse located in Sonora, California.

As and when Sandton's collateral is sold, the net proceeds from such sales will be utilized to pay down Sandton's Allowed Secured Claim, until such time as Sandton's Allowed Secured Claim has been paid in full, including interest accruing on such Claim at the rate of 4.5% per annum from and after the Petition Date (Sandton's non-default contract rate of interest).

Class 1 is not impaired by the Plan and, accordingly, Sandton is not entitled to vote for or against the Plan.

7.2.2   Class 2 (Bend Secured Parties).  Class 2 consists of the Allowed Secured Claims of Elizabeth C. McCool, Gregory F. Cushman, Margaret Cushman, Mallory McCool, Mary Jean Chandler, Anna Stevens, John Costa, and Jeffrey Cushman (collectively, the "Bend Secured Parties").  Each Bend Secured Party has appointed Elizabeth C. McCool as its agent with respect to its Class 2 Claim.  Each of the Bend Secured Parties has a secured lien on Debtor's real property located at 1777 SW Chandler Avenue, Bend, Oregon 97702 (the "Bend Property"), which lien is junior to Sandton's lien on such property.  Each Bend Secured Party will retain its security interest in the Bend Property with the same priority that it had as of the Petition Date.

**Tonkon Torp LLP**
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

As of the Petition Date, Debtor owed the Bend Secured Parties a combined amount of $258,004.60 in connection with prepetition loans made by the Bend Secured Parties to Debtor secured by the Bend Property.

If any net proceeds remain from the sale of the Bend Property, including after payment of Sandton's Allowed Secured Claim and any Property Tax Claims secured by the Bend Property, Debtor will pay such remaining net sales proceeds to Elizabeth C. McCool, as agent for the Bend Secured Parties, until such time as the Class 2 Claim has been paid in full, including any interest accruing on such Class 2 Claim from and after the Petition Date at the non-default contract rate of interest.

Class 2 is not impaired by the Plan and, accordingly, Class 2 is not entitled to vote for or against the Plan.

7.2.3   Class 3 (Property Tax Claims).  Class 3 consists of all Property Tax Claims.  A Property Tax Claim means the Secured Claim of any governmental unit for *ad valorem* property taxes or similar impositions that are secured by statutory liens on any of Debtor's real or personal property.  Debtor estimates Property Tax Claims to total approximately $900,000.

Each holder of a Property Tax Claim will retain its security interest in its Collateral with the same priority to which it is entitled by law.  Each holder of a Class 3 Claim shall be paid the Allowed Amount of its Claim in full upon any sale of the property securing its Class 3 Claim.

Class 3 is not impaired by the Plan, and any holder of an Allowed Class 3 Claim is not entitled to vote for or against the Plan.

7.2.4   Class 4 (General Unsecured Claims).  Class 4 consists of all Allowed General Unsecured Claims.  A General Unsecured Claim is any Unsecured Claim not otherwise treated or classified under the Plan.  At this time, Debtor estimates that General Unsecured Claims will range from approximately $6,000,000 to $8,000,000.

**Page 8 of 21** -   DEBTOR'S DISCLOSURE STATEMENT (MAY 22, 2019)

The Plan provides that on each Distribution Date each holder of a General Unsecured Claim will receive a Pro Rata Distribution of Available Cash with respect to its General Unsecured Claim.

Debtor is still analyzing General Unsecured Claims and cannot at this time accurately estimate the total amount of General Unsecured Claims, or the expected recovery on General Unsecured Claims.

Class 4 is impaired by the Plan. Accordingly, each holder of an Allowed Class 4 Claim is entitled to vote for or against the Plan.

7.2.5   Class 5 (SERP Claims). Class 5 consists of the Allowed Unsecured Claims for payments owing under Debtor's Supplemental Executive Retirement Plan ("SERP"). Debtor estimates that Class 5 Claims will total approximately $3,000,000. Pursuant to the terms of the SERP, SERP claims are subordinate to the claims of Debtor's general unsecured creditors. Accordingly all Class 5 Claims are subordinate to the payment in full of all other Allowed Claims, including Class 4 General Unsecured Claims.

If all such other Allowed Claims have been paid in full, including all Class 4 General Unsecured Claims, then each holder of an Allowed Class 5 Claim will receive a pro rata distribution on account of such Claims as and when cash is available for distribution. Debtor does not anticipate that any cash will be available to distribute on account of Class 5 Claims. Class 5 is impaired by the Plan. Accordingly, each holder of an Allowed Class 5 Claim is entitled to vote for or against the Plan.

7.2.6   Class 6 (Equity Interests and Claims Arising Therefrom). Class 6 consists of all Equity Interests and any and all Claims arising from or relating to such Equity Interests. The Plan provides that on the Effective Date, all Equity Interests will be deemed cancelled and that no holder of an Equity Interest will receive or retain on account of such Equity Interest any distributions, money, or other consideration under the Plan.

**Tonkon Torp LLP**
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

Class 6 is impaired by the Plan. Because all Equity Interests will be cancelled, and holders of Equity Interests will not receive or retain on account of their Equity Interests any distributions, money, or other consideration under the Plan, Class 6 is deemed to have rejected the Plan and, accordingly, Class 6 is not entitled to vote for or against the Plan.

**8.      DISPUTED CLAIMS; OBJECTIONS TO CLAIMS**

8.1      <u>Disputed Claims; Objections to Claims</u>.  The Plan provides that only Claims that are Allowed Claims are entitled to distributions under this Plan.  No Cash or other property shall be distributed under the Plan on account of any Disputed Claim, or a portion of any such Claim, unless and until such Disputed Claim becomes an Allowed Claim.  Debtor reserves the right to contest and object to any Claims and previously Scheduled Amounts. Unless otherwise ordered by the Bankruptcy Court, all objections to Claims and Scheduled Amounts (other than Administrative Expense Claims) shall be Filed and served upon counsel for Debtor and the holder of the Claim objected to on or before the later of (a) 45 days after the Effective Date or (b) 60 days after the date (if any) on which a Proof of Claim is Filed in respect of a Rejection Claim.  The last day for filing objections to Administrative Expense Claims shall be set pursuant to a further order of the Bankruptcy Court.  All Disputed Claims shall be resolved by the Bankruptcy Court.

8.2      <u>Subsequent Allowance of Disputed Claims</u>.  The holder of a Disputed Claim that becomes an Allowed Claim in full or in part subsequent to the Effective Date shall receive Cash distributions (including any make-up distributions) on the next applicable distribution date following the allowance of such Disputed Claim.

**9.      MEANS OF IMPLEMENTATION OF THE PLAN**

9.1      <u>Funding Plan Obligations</u>.  The Plan provides that Debtor will fund its Plan obligations and its ongoing expenses and liabilities from Cash on hand as of the Effective

**Page 10 of 21** -   DEBTOR'S DISCLOSURE STATEMENT (MAY 22, 2019)

Date, and Cash available to Debtor from and after the Effective Date from, among other things, liquidation of any assets remaining as of the Effective Date.

9.2     Continuation of Debtor; Winding Up Affairs; Dissolution.  The Plan provides that from and after the Effective Date, Debtor shall continue in existence solely for purposes of (a) administering this Plan and winding up its affairs as expeditiously as reasonably possible; (b) liquidating, by conversion to Cash or other methods, the Assets as expeditiously as reasonably possible; (c) enforcing and prosecuting all claims and causes of action, including Avoidance Actions, and other rights, interests, and privileges respecting the Assets, and compromising and settling such claims, causes of action, rights, interests, and privileges; (d) reconciling Claims and resolving Disputed Claims; (e) filing appropriate tax returns; (f) winding up its 401(k) Plan, and paying all fees and expenses associated therewith; and (g) taking such other actions as may be necessary or appropriate in connection with any of the above or to otherwise effectuate this Plan.  The Plan further provides that Debtor may incur and pay any and all reasonable and necessary expenses in performing the foregoing functions, and may hire agents and professionals to assist with the foregoing functions.  The Plan provides that on the Final Distribution Date, Debtor shall be deemed dissolved under applicable law without the need for any corporate or other actions, consents, or approvals other than filing articles of dissolution with the Oregon Secretary of State.  The Plan provides that on or promptly following the Final Distribution Date, Debtor may, without the need for any further actions, consents, or approvals, dispose of or destroy any and all records maintained by Debtor.

9.3     Post-Effective Date Management; Plan Agent

9.3.1   Plan Agent.  The Plan provides that from and after the Effective Date, Debtor will be managed solely by a Plan Agent.  The Plan Agent will be The Mountain Group.

**Page 11 of 21** -   DEBTOR'S DISCLOSURE STATEMENT (MAY 22, 2019)

9.3.2    Duties and Rights of Plan Agent.  The Plan provides the Plan Agent with very broad and exclusive authority to manage the affairs of Debtor until the Plan has been fully effectuated.  In general, the Plan Agent will take over the duties being performed pre-Effective Date by Debtor.  In addition to all rights and powers given to the Plan Agent under the Plan, the Plan Agent will have all of the rights and powers given to directors and officers under Oregon law and will have all rights and powers of a trustee appointed pursuant to Section 1104 of the Bankruptcy Code.

9.3.3    Compensation of Plan Agent.  The Plan provides that the Plan Agent will receive, as compensation for its services under the Plan, reasonable fees based upon its customary hourly rates in effect when services are performed, plus reimbursement of reasonable out-of-pocket costs and expenses incurred in connection with performing such services.

9.3.4    Fees and Expenses of Agents and Professionals.  The Plan provides that the Plan Agent will, from the Assets, pay the reasonable fees and expenses of all professional persons and agents employed by the Plan Agent in connection with this Plan, as well as the reasonable post-Confirmation fees and expenses of any attorney employed by the Committee in connection with the Plan.

9.4    Distributions by Plan Agent.  The Plan includes some administrative provisions governing Distributions.  Those provisions are summarized below.

9.4.1    Form of Payments.  Distributions to be made under the Plan will be made by check drawn on a domestic bank or by wire transfer from a domestic bank, at the sole election of the Plan Agent.

9.4.2    Delivery of Distributions.  Except as otherwise agreed to by the Plan Agent in writing, Distributions to be made under the Plan will be delivered by regular mail, postage prepaid, in an envelope addressed as directed in a written request served on the Plan Agent, but if no such request is made, to the address shown in Debtor's Schedules, as they

**Page 12 of 21** -   DEBTOR'S DISCLOSURE STATEMENT (MAY 22, 2019)

may from time to time be amended in accordance with Bankruptcy Rule 1009, or, if a different address is stated in a proof of claim duly filed with the Court, to such address stated in the proof of claim.

9.4.3    Unclaimed Property.  During the Claiming Period applicable to any particular Distribution made by or on behalf of Debtor pursuant to the Plan, Unclaimed Property with respect to such Distribution shall be distributed to the holders of Allowed Claims entitled thereto upon presentment to the Plan Agent of satisfactory proof of entitlement.  After expiration of the Claiming Period (subject to the right of the Plan Agent, in its sole discretion, to waive the provisions of this sentence, in whole or in part): (a) holders of Allowed Claims previously entitled to such Unclaimed Property shall no longer be entitled thereto; (b) such Claims shall be deemed disallowed for all purposes; and (c) the then-remaining Cash constituting Unclaimed Property with respect to such Distribution shall be redesignated as and become Available Cash (but without impairing the right of Debtor to use such redesignated funds to satisfy the costs of administering this Plan).

9.4.4    Time Bar to Cash Payments.  Checks issued in respect of Allowed Claims shall be null and void if not negotiated within 90 days after the date of issuance thereof.  Any requests for reissuance of any check shall be made to the Plan Agent prior to the expiration of such 90-day period.  After such date (subject to the right of the Plan Agent, in its sole discretion, to waive the provisions of this sentence, in whole or in part), (a) the holder of any such Claim who has failed to make a timely request for reissuance of such a voided check shall not be entitled to any other or further Distribution under this Plan on account of such voided check, and (b) the Unclaimed Property held on account of such voided check shall be redesignated as and become Available Cash (but without impairing the right of Debtor to use such funds to satisfy the costs of administering this Plan).

9.4.5    Minimum Distributions.  The Plan provides that if any Distribution to be made to any holder of an Allowed Claim under the Plan (including any Pro Rata

**Page 13 of 21** -   DEBTOR'S DISCLOSURE STATEMENT (MAY 22, 2019)

1  Distribution) is $10 or less, then, notwithstanding any contrary provision in the Plan, the Plan

2  Agent shall not be obligated to make such Distribution to such holder, and any Distribution

3  so withheld will become unrestricted Available Cash.

4  **10.  ASSETS AND LIABILITIES**

5  10.1  Assets.  Debtor estimates the total value of its assets in the range of

6  approximately $25,000,000 to $30,000,000.  Debtor's assets consist primarily of commercial

7  buildings and related real property, with a total estimated fair market value of approximately

8  $20,000,000 (see **Exhibit 2** attached hereto for the listing prices on Debtor's various real

9  estate), and various personal property associated with Debtor's newspaper businesses.

10  Debtor estimates the going concern value of its newspaper businesses at $5,000,000 to

11  $10,000,000.

12  10.2  Liabilities.  Debtor estimates its total liabilities at approximately $30,000,000,

13  exclusive of Administrative Expenses.

14  **11.  EXECUTORY CONTRACTS**

15  11.1  General Rejection of Executory Contracts.  The Plan provides that, except as

16  otherwise specifically provided in the Plan or in the Confirmation Order, effective as of the

17  Effective Date, all executory contracts of Debtor not previously rejected by operation of law

18  or by Court order (excluding only those that are assumed pursuant to Court order entered

19  prior to the Confirmation Date and those that are the subject of a motion to assume filed prior

20  to the Confirmation Date) will be deemed to be automatically rejected by Debtor as of the

21  Confirmation Date.

22  11.2  Claims for Rejection Damages.  The Plan provides that a Claim for damages

23  arising by reason of the rejection of an executory contract shall be classified and treated as a

24  General Unsecured Claim; provided, however, that any such Claim shall be deemed

25  disallowed, barred forever, and not enforceable against Debtor or any property of the Estate

26

**Page 14 of 21** -   DEBTOR'S DISCLOSURE STATEMENT (MAY 22, 2019)

1 unless a proof of claim therefor is filed with the Court and served on Debtor within 30 days

2 after the Effective Date.

**12. VOTING PROCEDURES**

4     12.1    <u>Ballots and Voting Deadline</u>.  A ballot has been enclosed with this Disclosure

5 Statement for use in voting on the Plan.  After carefully reviewing the Plan and this

6 Disclosure Statement, and if you are entitled to vote on the Plan (see below), please indicate

7 your acceptance or rejection of the Plan by voting for or against the Plan on the enclosed

8 ballot as directed below.

9             To be counted for voting purposes, ballots must be <u>received</u> no later than

10 _____ __.m. Pacific Time, on _____, 2019 by Debtor at the following

11 address:

Tonkon Torp LLP
Attention:  Spencer Fisher
888 SW Fifth Ave., Suite 1600
Portland, OR  97204-2099

14             Any ballots received after _____ __.m. Pacific Time on _____,

15 2019 will not be included in any calculation to determine whether the parties entitled to vote

16 on the Plan have voted to accept or reject the Plan.

17             A holder of a Claim impaired by the Plan is permitted to vote on the Plan.  If a

18 proof of claim has been filed with respect to such impaired Claim, then the vote will be based

19 on the amount of the proof of claim.  If no proof of claim has been filed, then the vote will be

20 based on the amount scheduled by Debtor in its Schedules.  Holders of disputed Claims who

21 have settled their dispute with Debtor are entitled to vote the settled amount of their Claim.

22 The Bankruptcy Code provides that such votes will be counted unless the Claim has been

23 disputed, disallowed, disqualified, or suspended prior to computation of the vote on the Plan.

24 The Claim to which an objection has been filed is not allowed to vote unless and until the

25 Bankruptcy Court rules on the objection.  The Bankruptcy Code provides that the Bankruptcy

26

**Page 15 of 21** -   DEBTOR'S DISCLOSURE STATEMENT (MAY 22, 2019)

Court may, if requested to do so by the holder of such Claim, estimate or temporarily allow a Disputed Claim for purposes of voting on the Plan.

If you do not receive a ballot, or if a ballot is damaged or lost, please contact:

Tonkon Torp LLP
Attention: Spencer Fisher
888 SW Fifth Ave., Suite 1600
Portland, OR 97204-2099
Telephone Number: (503) 802-2167

When a ballot is signed and returned without further instruction regarding acceptance or rejection of the Plan, the signed ballot shall be counted as a vote accepting the Plan. When a ballot is returned indicating acceptance or rejection of the Plan but is unsigned, the unsigned ballot will not be included in any calculation to determine whether parties entitled to vote on the Plan have voted to accept or reject the Plan. When a ballot is returned without indicating the amount of the Claim, the amount shall be as set forth on Debtor's Schedules or any Proof of Claim filed with respect to such Claim.

12.2    <u>Parties Entitled to Vote</u>. Pursuant to Section 1126 of the Bankruptcy Code, any holder of an Allowed Claim that is in an impaired Class under the Plan, and whose Class is not deemed to reject the Plan, is entitled to vote. A Class is "impaired" unless the legal, equitable, and contractual rights of the holders of claims in that Class are left unaltered by the Plan or if the Plan reinstates the Claims held by Members of such Class by (a) curing any defaults; (b) reinstating the maturity of such claim; (c) compensating the holder of such claim for damages that result from the reasonable reliance on any contractual provision of law that allows acceleration of such claim; and (d) otherwise leaving unaltered any legal, equitable, or contractual right of which the Claim entitles the holder of such Claim. Because of their favorable treatment, Classes that are not impaired are conclusively presumed to accept the Plan. Accordingly, it is not necessary to solicit votes from the holders of Claims in Classes that are not impaired.

**Page 16 of 21** -   DEBTOR'S DISCLOSURE STATEMENT (MAY 22, 2019)

Classes of Claims or interests that will not receive or retain any money or property under a Plan on account of such Claims or interests are deemed, as a matter of law under Section 1126(g) of the Bankruptcy Code, to have rejected the Plan and are likewise not entitled to vote on the Plan.

Classes 1, 2, and 3 are not impaired under the Plan and are deemed to have accepted the Plan.

Classes 4 and 5 are impaired under the Plan and are entitled to vote to accept or reject the Plan.

Class 6 will not receive or retain any money or property under the Plan on account of such Claims or interests and are deemed to have rejected the Plan.

12.3    <u>Votes Required for Class Acceptance of the Plan</u>.  For a Class of Claims to accept the Plan, Section 1126 of the Bankruptcy Code requires acceptance by Creditors that hold at least two-thirds in dollar amount and a majority in number of the Allowed Claims of such Class, in both cases counting only those claims actually voting to accept or reject the Plan.  The holders of Claims who fail to vote are not counted as either accepting or rejecting the Plan.  If the Plan is confirmed, the Plan will be binding with respect to all holders of Claims in each Class, including Classes and members of Classes that did not vote or that voted to reject the Plan.

**13.    CONFIRMATION OF THE PLAN**

13.1    <u>Confirmation Hearing</u>.  The Bankruptcy Court has scheduled a hearing on confirmation of the Plan on _____, 2019 at _____ Pacific Time.  The hearing will be held at the United States Bankruptcy Court for the District of Oregon, Courtroom No. _____, 1050 SW Sixth Avenue, Portland, Oregon 97204, before the Honorable Trish M. Brown, United States Bankruptcy Judge.  At that hearing, the Bankruptcy Court will consider whether the Plan satisfies the various requirements of the Bankruptcy Code, including whether it is feasible and whether it is in the best interests of creditors of Debtor.  Debtor will

**Page 17 of 21** -   DEBTOR'S DISCLOSURE STATEMENT (MAY 22, 2019)

**Tonkon Torp LLP**
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

1  submit a report to the Bankruptcy Court at that time concerning the votes for acceptance or

2  rejection of the Plan by the parties entitled to vote thereon.

3      Section 1128(b) of the Bankruptcy Code provides that any party in interest

4  may object to confirmation of the Plan. Any objections to confirmation of the Plan must be

5  made in writing and filed with the Bankruptcy Court and received by counsel for Debtor no

6  later than _____, 2019, by _____ __.m. Pacific Time. Unless an objection to

7  confirmation is timely filed and received, it may not be considered by the Bankruptcy Court.

8      13.2    Requirements of Confirmation/Liquidation Analysis. At the hearing on

9  confirmation, the Bankruptcy Court will determine whether the provisions of Section 1129 of

10  the Bankruptcy Code have been satisfied. If all the provisions of Section 1129 are met, the

11  Bankruptcy Court may enter an order confirming the Plan. Debtor believes the Plan satisfies

12  all the requirements of Chapter 11 of the Bankruptcy Code, that it has complied or will have

13  complied with all the requirements of Chapter 11, and that the Plan has been proposed and is

14  made in good faith.

15      Among other requirements for confirmation, to confirm the Plan the Bankruptcy

16  Court must determine that the Plan meets the requirements of Section 1129(a)(7) of the

17  Bankruptcy Code; that is, that the Plan is in the best interests of each holder of a Claim in an

18  impaired Class that has not voted to accept the Plan. Accordingly, if an impaired Class does

19  not unanimously accept the Plan, the "best interests" test requires that the Bankruptcy Court

20  find that the Plan provides to each holder of a Claim in such impaired Class a recovery on

21  account of the holder's Claim that has a value at least equal to the value of the distribution

22  each such holder would receive if Debtor were liquidated under Chapter 7 of the Bankruptcy

23  Code. Debtor believes that a liquidation under Chapter 7 of the Bankruptcy Code would

24  result in no distribution to general unsecured creditors.

25

26

**Page 18 of 21** - DEBTOR'S DISCLOSURE STATEMENT (MAY 22, 2019)

The Plan is a liquidating Plan. A liquidation analysis is attached hereto as **Exhibit 2**. The liquidation analysis includes both an orderly liquidation analysis under the Plan, as well as a Chapter 7 liquidation analysis.

Underlying the liquidation analysis are projections and assumptions that are inherently subject to significant uncertainties and contingencies. The liquidation analysis is based on assumptions that may change. Accordingly, there can be no assurance that the projected values reflected in the liquidation analysis will be realized, and actual results could vary materially from those shown on the liquidation analysis.

For numerous reasons, Debtor believes a Chapter 7 liquidation would result in significantly lower distributions to creditors. As discussed above, Debtor's assets consist primarily in commercial buildings, and in the newspapers as going concern businesses. In a Chapter 7 liquidation, Debtor believes the commercial buildings would be sold for 10% to 15% less than if sold pursuant to an orderly liquidation. Further, in a Chapter 7 liquidation, the newspapers would have no going concern value, and the expenses and carrying costs associated with the sales of the underlying assets (e.g., equipment, inventory, etc.) could equal or exceed the value of such assets. Further, under Section 326(a) of the Bankruptcy Code, a Chapter 7 trustee is entitled to compensation based on a percentage of all amounts disbursed or turned over to Creditors. Debtor believes this compensation would exceed the amount that will be charged by the Plan Agent.

Furthermore, conversion to Chapter 7 is likely to delay the wind-down of the estate and the distribution of monies to Creditors. This is because in a Chapter 7 case, additional time will be required for a Chapter 7 trustee to become familiar with Debtor's financial affairs and assets. For these reasons, among others, Debtor believes that conversion to a case under Chapter 7 would result in (a) additional costs being borne by the estate above those the estate would incur under the Plan, (b) lower distributions being received by Creditors, and (c) significant delays in distributions to Creditors.

**Page 19 of 21** -  DEBTOR'S DISCLOSURE STATEMENT (MAY 22, 2019)

**Tonkon Torp LLP**
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

**14.    MISCELLANEOUS PROVISIONS**

In addition to the provisions discussed above, the Plan contains a number of administrative and miscellaneous provisions. Those provisions are not restated or summarized in this Disclosure Statement. Please review the Plan carefully.

**15.    TAX CONSEQUENCES TO DEBTOR OF THE PLAN**

Although Debtor has not concluded its tax analysis, confirmation of the Plan is not expected to generate substantial tax consequences to Debtor.

CIRCULAR 230 DISCLAIMER: TO ENSURE COMPLIANCE WITH REQUIREMENTS IMPOSED BY THE INTERNAL REVENUE SERVICE, HOLDERS OF CLAIMS ARE HEREBY NOTIFIED THAT (A) ANY DISCUSSION OF FEDERAL TAX ISSUES IN THIS DISCLOSURE STATEMENT (INCLUDING ANY ATTACHMENTS) IS NOT INTENDED OR WRITTEN TO BE USED OR RELIED UPON, AND CANNOT BE USED OR RELIED UPON, FOR THE PURPOSE OF (1) AVOIDING TAX-RELATED PENALTIES UNDER THE INTERNAL REVENUE CODE OF 1986, AS AMENDED; OR (2) PROMOTING, MARKETING, OR RECOMMENDING TO ANOTHER PARTY ANY TRANSACTION OR TAX MATTER(S) ADDRESSED HEREIN; AND (B) ANY DISCUSSION OF FEDERAL TAX ISSUES IN THIS DISCLOSURE STATEMENT (INCLUDING ANY ATTACHMENTS) ARE WRITTEN IN CONNECTION WITH DEBTOR SOLICITING ACCEPTANCES OF THE PLAN THROUGH THIS DISCLOSURE STATEMENT.

YOU ARE URGED TO CONSULT YOUR OWN TAX ADVISOR ABOUT ANY FEDERAL, STATE, LOCAL, AND APPLICABLE FOREIGN, INCOME AND OTHER TAX CONSEQUENCES OF THE PLAN.

**Tonkon Torp LLP**
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

**16.     RECOMMENDATION AND CONCLUSION**

Please read this Disclosure Statement and the Plan carefully.  After reviewing all the information and making an informed decision, please vote by using the enclosed ballot.

Debtor strongly urges you to vote in support of the Plan.

DATED this 22nd day of May, 2019.

WESTERN COMMUNICATIONS, INC.


By */s/ Elizabeth C. McCool*
        Elizabeth C. McCool, Chairwoman

Presented by:

TONKON TORP LLP


By */s/ Michael W. Fletcher*
        Albert N. Kennedy, OSB No. 821429
        Michael W. Fletcher, OSB No. 010448
        Of Attorneys for Debtor

**Page 21 of 21** -   DEBTOR'S DISCLOSURE STATEMENT (MAY 22, 2019)

1  Albert N. Kennedy, OSB No. 821429 (Lead Attorney)
      Direct Dial:  503.802.2013
2     Facsimile:  503.972.3713
      E-Mail:  albert.kennedy@tonkon.com
3  Michael W. Fletcher, OSB No. 010448
      Direct Dial:  (503) 802-2169
4     Facsimile:  (503) 972-3867
      E-Mail:  michael.fletcher@tonkon.com
5  TONKON TORP LLP
   888 SW Fifth Avenue, Suite 1600
6  Portland, OR 97204-2099

7        Attorneys for Debtor

8

9

10                  UNITED STATES BANKRUPTCY COURT

11                       DISTRICT OF OREGON

12  In re                              │  Case No. 19-30223-tmb11

13  Western Communications, Inc.       │  **DEBTOR'S PLAN OF LIQUIDATION**
                                       │  **(MAY 22, 2019)**
14                       Debtor.

15

16

17

18

19

20

21

22

23

24

25

26

DEBTOR'S PLAN OF LIQUIDATION (MAY 22, 2019)

Tonkon Torp LLP
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

EXHIBIT 1
1 of 30

# TABLE OF CONTENTS

Page

SECTION 1    DEFINITIONS ............................................................................ 1
     1.1.    Defined Terms ............................................................. 1
     1.2.    Other Terms ................................................................. 8
     1.3.    Interpretation; Application of Definitions; and Rules of Construction ......... 8

SECTION 2    TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS AND PRIORITY TAX CLAIMS ............................................................. 9
     2.1.    Administrative Expense Claims ................................. 9
     2.2.    Priority Tax Claims ..................................................... 9

SECTION 3    CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS ................................................................ 9
     3.1.    Classification ............................................................... 9
     3.2.    Treatment ................................................................... 10

SECTION 4    DISPUTED CLAIMS; OBJECTIONS TO CLAIMS ................. 12
     4.1.    Disputed Claims; Objections to Claims .................. 12
     4.2.    Subsequent Allowance of Disputed Claims ............ 13

SECTION 5    MEANS FOR IMPLEMENTATION OF THE PLAN ................. 13
     5.1.    Funding Plan Obligations and Ongoing Expenses .... 13
     5.2.    Continuation of Debtor; Winding Up Affairs; Dissolution ......... 13
     5.3.    Post-Effective Date Management; Plan Agent ......... 14
     5.4.    Distributions by Plan Agent ...................................... 17

SECTION 6    TREATMENT OF EXECUTORY CONTRACTS ....................... 18
     6.1.    General Rejection of Executory Contracts ............. 18
     6.2.    Claims for Rejection Damages ............................... 18

SECTION 7    EFFECT OF PLAN CONFIRMATION ................................... 19
     7.1.    Effect of Confirmation ............................................ 19
     7.2.    Revesting; Operation of Business ......................... 19

SECTION 8    RETENTION OF JURISDICTION ......................................... 19
     8.1.    Jurisdiction of the Bankruptcy Court .................... 19
     8.2.    Failure of Bankruptcy Court to Exercise Jurisdiction ........... 20

SECTION 9    ADMINISTRATIVE PROVISIONS ....................................... 20
     9.1.    Bankruptcy Fees ..................................................... 20
     9.2.    Modification of the Plan ......................................... 21
     9.3.    Revocation or Withdrawal of Plan ........................ 21

SECTION 10   MISCELLANEOUS PROVISIONS ...................................... 22
     10.1.   Retention of Causes of Action ............................... 22
     10.2.   Utility Deposits ........................................................ 22
     10.3.   Governing Law ........................................................ 23
     10.4.   Withholding and Reporting Requirements ............. 23
     10.5.   Section 1146(c) Exemption .................................... 23

**Tonkon Torp LLP**
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

**EXHIBIT 1**
**2 of 30**

| 10.6. | Severability | 24 |
| 10.7. | Binding Effect | 24 |
| 10.8. | Recordable Order | 24 |
| 10.9. | Plan Controls | 24 |
| 10.10. | Effectuating Documents and Further Transactions | 24 |
| 10.11. | Saturday, Sunday or Legal Holiday | 24 |
| 10.12. | Timing of Distributions | 25 |
| 10.13. | Final Order | 25 |
| 10.14. | Event of Default; Remedy | 25 |
| 10.15. | Amendments to Claims | 25 |
| 10.16. | Setoff, Recoupment and Defenses | 26 |
| 10.17. | No Retiree Benefits | 26 |
| 10.18. | Computation of Time Periods | 26 |
| 10.19. | Severability | 26 |
| 10.20. | Exhibits | 27 |

**Page ii of ii** - DEBTOR'S PLAN OF LIQUIDATION (MAY 22, 2019)

Tonkon Torp LLP
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

EXHIBIT 1
3 of 30

Case 19-30223-tmb11    Doc 140    Filed 05/22/19

Western Communications, Inc., debtor and debtor-in-possession (the "Debtor"), proposes the following Plan of Liquidation pursuant to the provisions of Chapter 11 of the Bankruptcy Code.

A Disclosure Statement has been provided with this Plan to assist you in understanding the Plan and making an informed decision whether to vote for or against the Plan.

## SECTION 1

## DEFINITIONS

1.1.    <u>Defined Terms</u>. Definitions of certain terms used in the Plan are set forth below.  Other terms are defined in the text of the Plan or in the text of the Disclosure Statement.  In either case, when a defined term is used, the first letter of each word in the defined term is capitalized.  Terms used and not defined in the Plan or Disclosure Statement shall have the meanings given in the Bankruptcy Code or Bankruptcy Rules, or otherwise as the context requires.  The meanings of all terms shall be equally applicable to both the singular and plural, and masculine and feminine, forms of the terms defined. The words "herein," "hereof," "hereto," "hereunder," and others of similar import, refer to the Plan as a whole and not to any particular article, section, subsection, or clause contained in the Plan.  Captions and headings to articles, sections, and exhibits are inserted for convenience of reference only and are not intended to be part of or to affect the interpretation of the Plan.  The rules of construction set forth in Section 102 of the Bankruptcy Code shall apply.  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

1.1.1.    <u>Administrative Expense Claim</u> means a Claim that is entitled to priority under Sections 503(b) and 507(a)(2) of the Bankruptcy Code.

1.1.2.    <u>Allowed Amount</u> means: (a) with reference to any Claim (other than an Administrative Expense Claim): (i) if the holder thereof has not filed a proof of claim

**Page 1 of 27** - DEBTOR'S PLAN OF LIQUIDATION (MAY 22, 2019)

**Tonkon Torp LLP**
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

with the Court within the applicable period of limitation fixed pursuant to Bankruptcy Rule 3003(c)(3), the amount of the Claim that is listed in Debtor's schedules, as they may from time to time be amended in accordance with Bankruptcy Rule 1009, as not disputed, contingent, or unliquidated; or (ii) if the holder thereof has filed a proof of claim with the Court within the applicable period of limitation fixed pursuant to Bankruptcy Rule 3003(c)(3), (a) the amount stated in such proof of claim, if no objection to such proof of claim has been interposed within any applicable period of limitation fixed by this Plan or a Final Order; (b) such amount as shall be fixed by Final Order if an objection has been timely interposed; (c) with reference to an Administrative Expense Claim that requires Court approval as precondition to payment, such amount as shall be fixed by Final Order; (d) with reference to any Claim arising from the recovery of property under Sections 550 or 553 of the Bankruptcy Code, or from the denial or avoidance of an interest in property of the Estate (i) if, within 30 days after the judgment for the recovery of money or property, or after the judgment that denies or avoids any such interest, becomes a Final Order, the holder thereof fully satisfies such judgment, (a) the amount so paid to the Estate pursuant to such judgment (whether or not such holder files a proof of claim with the Court respecting such Claim) and/or (b) such additional amount as shall be fixed by a Final Order, but only if a proof of claim therefor is filed with the Court and served on Debtor within 30 days after such judgment becomes a Final Order; or (ii) if, in response to a demand for payment and before an adversary proceeding or other legal action is commenced with regard to such matters, the holder thereof complies with such a demand, the amount so paid to the Estate pursuant to such demand (whether or not such holder files a proof of claim with the Court respecting such Claim); or (e) any Claim allowed under or pursuant to the terms of this Plan; provided, however, that the Allowed Amount shall not include interest, penalties, or other charges accruing on a Claim after the Petition Date except as specifically provided for in this Plan or in the Confirmation Order.

**Page 2 of 27** - DEBTOR'S PLAN OF LIQUIDATION (MAY 22, 2019)

Tonkon Torp LLP
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

Case 19-30223-tmb11    Doc 140    Filed 05/22/19

**EXHIBIT 1**
**5 of 30**

1         1.1.3.    <u>Allowed Claim</u> means a Claim for which an Allowed Amount has

2  been determined.

3         1.1.4.    <u>Assets</u> at any particular time means, collectively, all right, title, and

4  interest of the Estate in and to the property described in Section 541 of the Bankruptcy Code,

5  and includes all Avoidance Actions.

6         1.1.5.    <u>Available Cash</u> at any particular time means all Cash held by or for

7  Debtor that the Plan Agent, in its sole discretion, determines is then available for distribution.

8         1.1.6.    <u>Avoidance Action</u> means any claim or cause of action of the Estate

9  that arises under Chapter 5 of the Bankruptcy Code.

10         1.1.7.    <u>Ballot</u> means a ballot submitted by a holder of a Claim to accept or

11  reject this Plan.

12         1.1.8.    <u>Bankruptcy Code</u> means Title 11 of the United States Code, and any

13  amendments thereto, applicable to this Chapter 11 case as in effect on the Confirmation Date.

14         1.1.9.    <u>Bankruptcy Rules</u> means the Federal Rules of Bankruptcy

15  Procedure.

16         1.1.10.  <u>Bend Property</u> means Debtor's real property located at 1777 SW

17  Chandler Avenue, Bend, Oregon 97702.

18         1.1.11.  <u>Case or Chapter 11 Case</u> means the case under Chapter 11 of the

19  Bankruptcy Code with respect to Debtor pending in the District of Oregon, administered as

20  *In re Western Communications, Inc.*, Case No. 19-30223-tmb11.

21         1.1.12.  <u>Cash</u> means cash, cash equivalents, and other readily marketable

22  direct obligations of the United States of America.

23         1.1.13.  <u>Claim</u> means (a) any right to payment from Debtor arising before the

24  Effective Date, whether or not such right is reduced to judgment, liquidated, unliquidated,

25  fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or

26  unsecured; or (b) any right to an equitable remedy against Debtor arising before the Effective

**Page 3 of 27** - DEBTOR'S PLAN OF LIQUIDATION (MAY 22, 2019)

**Tonkon Torp LLP**
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

Case 19-30223-tmb11   Doc 140   Filed 05/22/19

**EXHIBIT 1**
**6 of 30**

Date for breach of performance if such breach gives rise to a right of payment from Debtor, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.

1.1.14.  <u>Claiming Period</u> means, with respect to any particular Distribution made by Debtor pursuant to this Plan, a period of 90 days following such Distribution.

1.1.15.  <u>Class</u> means a category of Claims or Equity Interests that is substantially similar to each other, as classified pursuant to the Plan.

1.1.16.  <u>Collateral</u> means, with respect to any Secured Claim, the property, or interest in property, of the Estate that secures such Claim.

1.1.17.  <u>Confirmation Date</u> means the date of entry of the Confirmation Order.

1.1.18.  <u>Confirmation Order</u> means the Court order confirming the Plan pursuant to Section 1129 of the Bankruptcy Code.

1.1.19.  <u>Court</u> or <u>Bankruptcy Court</u> means (a) the United States District Court for the District of Oregon having jurisdiction over this Chapter 11 case and, to the extent of any reference made pursuant to 28 U.S.C. § 157, the United States Bankruptcy Court for the District of Oregon and any court having competent jurisdiction to hear appeals therefrom; and (b) any other court having competent jurisdiction with respect to matters described in this Plan.

1.1.20.  <u>Creditor</u> means a holder of a Claim.

1.1.21.  <u>Debtor</u> means Western Communications, Inc., as debtor and debtor-in-possession.

1.1.22.  <u>Disallowed Amount</u> means, with respect to a particular Disputed Claim, that amount which is equal to the difference, if any, between the Face Amount of such Claim and the Allowed Amount thereof.

**Page 4 of 27** - DEBTOR'S PLAN OF LIQUIDATION (MAY 22, 2019)

**Tonkon Torp LLP**
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

| 1 | 1.1.23. <u>Disclosure Statement</u> means Debtor's disclosure statement pertaining |
| 2 | to the Plan, as amended, modified, supplemented, or restated from time to time. |
| 3 | 1.1.24. <u>Disputed Amount</u> means, with respect to a particular Disputed |
| 4 | Claim, that amount which is equal to the difference, if any, between the Face Amount of such |
| 5 | Claim and the amount of the Claim that Debtor concedes. |
| 6 | 1.1.25. <u>Disputed Claim</u> means any Claim for which an Allowed Amount has |
| 7 | not yet been determined and with respect to which Debtor or the Committee has an objection |
| 8 | (whether or not a written objection has been filed with the Court) or to which an objection |
| 9 | has been filed with the Court. |
| 10 | 1.1.26. <u>Distribution</u> means a payment of Cash by Debtor under this Plan to a |
| 11 | holder of an Allowed Claim. |
| 12 | 1.1.27. <u>Distribution Date</u> means any date on which the Plan Agent makes a |
| 13 | distribution to holders of Class 5 Claims under the Plan. |
| 14 | 1.1.28. <u>Effective Date</u> means the first day of the first month after the |
| 15 | Confirmation Date on which (a) all conditions precedent to effectiveness specified in the |
| 16 | Plan have been satisfied or waived and (b) no stay of the Confirmation Order is in effect. |
| 17 | 1.1.29. <u>Equity Interest</u> means any capital stock or other ownership interest in |
| 18 | Debtor, however denominated and whether or not transferable, and any option, warrant, or |
| 19 | right to purchase, sell, or subscribe for an ownership interest in or other equity security of |
| 20 | Debtor. |
| 21 | 1.1.30. <u>Estate</u> means the estate of Debtor created by Section 541 of the |
| 22 | Bankruptcy Code. |
| 23 | 1.1.31. <u>Face Amount</u> means (a) with reference to any Claim (other than an |
| 24 | Administrative Expense Claim) (i) if the holder thereof has not filed a proof of claim with the |
| 25 | Court within the applicable period of limitation fixed pursuant to Bankruptcy |
| 26 | Rule 3003(c)(3), the amount of the Claim that is listed in Debtor's schedules, as they may |

**Page 5 of 27** - DEBTOR'S PLAN OF LIQUIDATION (MAY 22, 2019)

Tonkon Torp LLP
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

from time to time be amended in accordance with Bankruptcy Rule 1009, as not disputed, contingent, or unliquidated; or (ii) if the holder thereof has filed a proof of claim with the Court within the applicable period of limitation fixed pursuant to Bankruptcy Rule 3003(c)(3), the amount stated in such proof of claim; or (b) with reference to an Administrative Expense Claim of a professional for which an application for allowance of compensation or reimbursement of expenses is filed within such time as may be fixed by the Court, the net amount to which the applicant would be entitled if the application were to be granted in full.

1.1.32.   <u>Filed</u> means Filed with the Bankruptcy Court in the Chapter 11 Case.

1.1.33.   <u>Final Distribution Date</u> means the date the Plan Agent determines, in its good faith discretion, that no further payments or distributions are likely to be required by Debtor under this Plan.

1.1.34.   <u>Final Order</u> means a judgment, order, or other decree issued and entered by the Court so long as no stay thereof is in effect, or a stipulation or other agreement entered into which is intended by the parties thereto to have the same effect with like finality.

1.1.35.   <u>General Unsecured Claim</u> means any Unsecured Claim not otherwise treated or classified under this Plan.

1.1.36.   <u>Petition Date</u> means January 22, 2019.

1.1.37.   <u>Plan</u> means this Chapter 11 Plan and all exhibits and schedules hereto, which are incorporated by reference as amended, modified, restated, or supplemented from time to time.

1.1.38.   <u>Plan Agent</u> means The Mountain Group or any successor designated by the Court.

1.1.39.   <u>Priority Tax Claim</u> means an Allowed Unsecured Claim entitled to priority under Section 507(a)(8) of the Bankruptcy Code.

**Page 6 of 27** - DEBTOR'S PLAN OF LIQUIDATION (MAY 22, 2019)

**Tonkon Torp LLP**
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

Case 19-30223-tmb11    Doc 140    Filed 05/22/19

**EXHIBIT 1**
**9 of 30**

1.1.40. <u>Pro Rata</u> at any particular time means, with respect to any Allowed Claim in a Class, the same proportion that the Allowed Amount of such Claim bears to the aggregate of (a) the Allowed Amount of all Claims in such Class, plus (b) the Face Amounts of all Disputed Claims in such Class, as reduced from time to time as and to the extent the Disallowed Amounts of such Claims are determined.

1.1.41. <u>Property Tax Claim</u> means the Secured Claim of any governmental unit for *ad valorem* property taxes or similar impositions that are secured by statutory liens on any of Debtor's real or personal property.

1.1.42. <u>Rejection Claim</u> means a Claim arising from the rejection of an unexpired executory contract pursuant to this Plan or a Final Order.

1.1.43. <u>Sandton</u> means Sandton Credit Solution Master Fund III, LP.

1.1.44. <u>Scheduled Amounts</u> means the amount of Claims stated in the Schedules.

1.1.45. <u>Schedules</u> means the Schedules of Assets and Liabilities Filed by Debtor pursuant to Section 521 of the Bankruptcy Code, as amended, modified, restated, or supplemented from time to time.

1.1.46. <u>Secured Claim</u> means a Claim to the extent such Claim constitutes a secured claim under Sections 506(a) or 1111(b) of the Bankruptcy Code.

1.1.47. <u>SERP</u> means Debtor's Supplemental Executive Retirement Plan.

1.1.48. <u>Unclaimed Property</u> at any particular time means the Cash, exclusive of any interest earned thereon, held by or for Debtor that is unclaimed by a Creditor following a Distribution made by or for Debtor pursuant to the Plan (including property attributable to checks that have been returned as undeliverable without a proper forwarding address, checks that have not been cashed, and checks that were not mailed or delivered because of the absence of a proper address to which to mail or deliver such property).

**Page 7 of 27** - DEBTOR'S PLAN OF LIQUIDATION (MAY 22, 2019)

**Tonkon Torp LLP**
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

Case 19-30223-tmb11    Doc 140    Filed 05/22/19

**EXHIBIT 1**
**10 of 30**

1.1.49. <u>Unsecured Claim</u> means a Claim that is not an Administrative Expense Claim, a Priority Tax Claim, an Other Priority Claim, a Property Tax Claim, or a Secured Claim.

1.2. <u>Other Terms</u>. Terms used and not defined in this Plan that are defined in the Bankruptcy Code or in the Bankruptcy Rules shall have the meanings ascribed to them in the Bankruptcy Code or in the Bankruptcy Rules, as applicable.

1.3. <u>Interpretation; Application of Definitions; and Rules of Construction</u>. Wherever from the context it appears appropriate, each term stated in either the singular or the plural shall include both the singular and the plural, and pronouns stated in the masculine, feminine, or neuter gender shall include the masculine, feminine, and neuter. For purposes of the Plan (a) any reference in the Plan to a contract, instrument, release, indenture, or other agreement or document being in a particular form or on particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions; (b) any reference in the Plan to an existing document or exhibit filed or to be filed means such document or exhibit as may have been or may be amended, modified, or supplemented; and (c) unless otherwise specified, all references in the Plan to Sections and Exhibits are references to Sections and Exhibits of or to the Plan. The words "herein," "hereof," "hereto," "hereunder," "hereunto," and other words of similar meaning refer to this Plan as a whole and not to any particular section, subsection, or clause contained in this Plan. The rules of construction contained in Section 102 of the Bankruptcy Code shall apply to the construction of this Plan. The headings in this Plan are for convenience of reference only and shall not limit or otherwise affect the provisions of this Plan. Unless otherwise indicated herein, all references to dollars means United States dollars.

**Page 8 of 27** - DEBTOR'S PLAN OF LIQUIDATION (MAY 22, 2019)

**Tonkon Torp LLP**
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

Case 19-30223-tmb11    Doc 140    Filed 05/22/19

**EXHIBIT 1**
**11 of 30**

# SECTION 2

## TREATMENT OF ADMINISTRATIVE EXPENSE

## CLAIMS AND PRIORITY TAX CLAIMS

2.1.    <u>Administrative Expense Claims</u>.  Each holder of an Administrative

Expense Claim shall receive payment of such Claim in full in Cash on the later of (a) the

Effective Date, or (b) the date on which such Claim becomes an Allowed Claim, unless

such holder agrees to a different treatment of such Claim (including, without limitation,

any different treatment that may be provided for in any documentation, statute, or

regulation governing such Claim); provided, however, that Administrative Expense

Claims representing obligations incurred in the ordinary course of business by Debtor

during the Chapter 11 Case shall be paid by Debtor in the ordinary course of business and

in accordance with any terms and conditions of the particular transaction, and any

agreements relating thereto.

2.2.    <u>Priority Tax Claims</u>.  Each holder of a Priority Tax Claim shall receive

payment of such Claim in full in Cash on the later of (a) the Effective Date, or (b) the

date on which such Claim becomes an Allowed Claim.  The Priority Tax Claim of the

Internal Revenue Service will be reduced by the offset of the backup withholding tax paid

in 2017 and 2018 in the total amount of $414,776.64.

# SECTION 3

## CLASSIFICATION AND TREATMENT OF CLAIMS AND EQUITY INTERESTS

3.1.    <u>Classification</u>.  All Claims (other than Administrative Expense Claims

and Priority Tax Claims) and all Equity Interests are placed in the following Classes for

all purposes.  A Claim is classified in a particular Class only to the extent the Claim falls

within the description of that Class and is classified in another Class only to the extent

that any remainder of the Claim falls within the description of such other Class.  A Claim

is in a particular Class only to the extent the Claim is an Allowed Claim in that Class and

**Page 9 of 27** - DEBTOR'S PLAN OF LIQUIDATION (MAY 22, 2019)

**Tonkon Torp LLP**
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

Case 19-30223-tmb11    Doc 140    Filed 05/22/19

**EXHIBIT 1**
**12 of 30**

has not been paid or otherwise satisfied prior to the Effective Date. Class 1 and Class 3 are unimpaired by the Plan. All other Classes are impaired by the Plan.

3.1.1. Class 1 (Sandton) consists of the Allowed Secured Claim of Sandton.

3.1.2. Class 2 (Bend Secured Parties) consists of the Allowed Secured Claims of Elizabeth C. McCool, Gregory F. Cushman, Margaret Cushman, Mallory McCool, Mary Jean Chandler, Anna Stevens, John Costa, and Jeffrey Cushman (collectively, the "Bend Secured Parties"). Each Bend Secured Party has appointed Elizabeth C. McCool as its agent with respect to its Class 2 Claim.

3.1.3. Class 3 (Property Tax Claims) consists of all Allowed Property Tax Claims. Each Property Tax Claim shall be deemed placed in a separate subclass for purposes of this Plan.

3.1.4. Class 4 (General Unsecured Claims) consists of all Allowed General Unsecured Claims.

3.1.5. Class 5 (SERP Claims) consists of the Allowed Unsecured Claims for any amounts owing under or with respect to Debtor's SERP.

3.1.6. Class 6 (Equity Interests and Claims Arising Therefrom) consists of all Equity Interests and any and all Claims arising from or relating to such Equity Interests.

3.2. Treatment. The Classes of Claims and Equity Interests shall receive the treatment described herein, which treatment shall be in full and complete satisfaction, settlement, release, and discharge of, and in exchange for, all such Claims and Equity Interests.

3.2.1. Class 1 (Sandton). The Class 1 Claim is secured by a perfected security interest in substantially all of Debtor's personal property and in certain real property of Debtor. Class 1 will retain its interests in its Collateral with the same priority it had as of the Petition Date. As and when Sandton's Collateral is sold, the net proceeds from such sales

**Page 10 of 27** - DEBTOR'S PLAN OF LIQUIDATION (MAY 22, 2019)

**Tonkon Torp LLP**
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

Case 19-30223-tmb11    Doc 140    Filed 05/22/19

**EXHIBIT 1**
**13 of 30**

will be utilized to pay down Sandton's Allowed Secured Claim until such time as Sandton's Allowed Secured Claim has been paid in full, including interest accruing on such Claim at the rate of 4.5% per annum from and after the Petition Date.

3.2.2. Class 2 (Bend Secured Parties). The Class 2 Claims of the Bend Secured Parties are secured by junior deeds of trust on the Bend Property. Each Bend Secured Party will retain its security interest in the Bend Property with the same priority that it had as of the Petition Date. If any net proceeds remain from the sale of the Bend Property after payment of Sandton's Allowed Secured Claim and the Property Tax Claim of Deschutes County, Debtor will pay such remaining net sales proceeds to Elizabeth C. McCool, as agent for the Bend Secured Parties, until such time as the Class 2 Claim has been paid in full, including any interest accruing on such Class 2 Claim from and after the Petition Date at the non-default contract rate of interest.

3.2.3. Class 3 (Property Tax Claims). Each holder of a Class 3 Claim will retain its security interest in its Collateral with the same priority to which it is entitled by law. Each holder of a Class 3 Claim shall be paid the Allowed Amount of its Claim in full upon any sale of the property securing its Class 3 Claim, but in no event later than any applicable time limits required by the Bankruptcy Code.

3.2.4. Class 4 (General Unsecured Claims). Subject to the minimum Distribution provision set forth in this Plan, on each Distribution Date Debtor shall make Pro Rata distributions of Available Cash to the holders of Allowed Claims in Class 4. A final Distribution shall be made to the holders of Allowed Claims in Class 4 promptly following the later to occur of (a) the date on which all Assets have been reduced to Cash or abandoned by Debtor, (b) the date on which all Disputed Claims have been withdrawn or resolved by Final Order, or (c) the date on which all required tax returns have been filed; provided, however, that in no event shall Debtor be obligated to make such a Distribution if the Plan Agent, in its sole discretion, determines that there is insufficient Available Cash to make a

**Page 11 of 27** - DEBTOR'S PLAN OF LIQUIDATION (MAY 22, 2019)

**Tonkon Torp LLP**
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

Case 19-30223-tmb11    Doc 140    Filed 05/22/19

**EXHIBIT 1**
**14 of 30**

cost efficient Distribution, taking into account the size of the Distribution to be made and the number of recipients of such Distribution, in which event such Available Cash shall, at the sole discretion of the Plan Agent, either be paid into the Court and disposed of under Chapter 129 of Title 28 of the United States Code or donated to one or more Section 501(c)(3) organizations, which shall be selected by the Plan Agent in its sole discretion.  In no event shall the foregoing impair the right of Debtor to use such excess funds to satisfy the costs of administering this Plan.

3.2.5.  <u>Class 5 (SERP Claims)</u>.  The Class 5 Claims are junior and subordinate to the Class 4 General Unsecured Claims and will be paid only if all Class 4 Claims have been paid in full.  If all Allowed Class 4 Claims have been paid in full, then each holder of an Allowed Class 5 Claim will receive Pro Rata distributions of Available Cash.

3.2.6.  <u>Class 6 (Equity Interests and Claims Arising Therefrom)</u>.  On the Effective Date, all Equity Interests shall be deemed cancelled.  No holder of a Class 6 Claim or Equity Interest shall receive or retain on account of such Class 6 Claim or Equity Interest any distributions, money, or other consideration on account of such Claim or Equity Interest under this Plan.

## SECTION 4

## DISPUTED CLAIMS; OBJECTIONS TO CLAIMS

4.1.  <u>Disputed Claims; Objections to Claims</u>.  Only Claims that are Allowed Claims shall be entitled to distributions under this Plan.  No Cash or other property shall be distributed under this Plan on account of any Disputed Claim, or a portion of any such Claim, unless and until such Disputed Claim becomes an Allowed Claim.  Debtor reserves the right to contest and object to any Claims and previously Scheduled Amounts, including, without limitation, those Claims and Scheduled Amounts that are specifically referenced herein; are not listed in the Schedules; are listed therein as disputed,

**Page 12 of 27** - DEBTOR'S PLAN OF LIQUIDATION (MAY 22, 2019)

**Tonkon Torp LLP**
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

Case 19-30223-tmb11    Doc 140    Filed 05/22/19

**EXHIBIT 1**
**15 of 30**

contingent, and/or unliquidated in amount; or are listed therein at a different amount than Debtor currently believes is validly due and owing. Unless otherwise ordered by the Bankruptcy Court, all objections to Claims and Scheduled Amounts (other than Administrative Expense Claims) shall be Filed and served upon the holder of the Claim objected to on or before the later of (a) 45 days after the Effective Date or (b) 60 days after the date (if any) on which a Proof of Claim is Filed in respect of a Rejection Claim. The last day for filing objections to Administrative Expense Claims shall be set pursuant to a further order of the Bankruptcy Court. All Disputed Claims shall be resolved by the Bankruptcy Court.

    4.2.    <u>Subsequent Allowance of Disputed Claims</u>. The holder of a Disputed Claim that becomes an Allowed Claim in full or in part subsequent to the Effective Date shall receive Cash distributions (including any make-up distributions) on the next applicable distribution date following the allowance of such Disputed Claim.

## SECTION 5

## MEANS FOR IMPLEMENTATION OF THE PLAN

    5.1.    <u>Funding Plan Obligations and Ongoing Expenses</u>. Debtor will fund its Plan obligations and its ongoing expenses and liabilities from Cash on hand as of the Effective Date and Cash available to Debtor from and after the Effective Date from, among other things, the liquidation of Assets.

    5.2.    <u>Continuation of Debtor; Winding Up Affairs; Dissolution</u>. From and after the Effective Date, Debtor shall continue in existence solely for purposes of (a) administering this Plan and winding up its affairs as expeditiously as reasonably possible; (b) liquidating, by conversion to Cash or other methods, the Assets as expeditiously as reasonably possible; (c) enforcing and prosecuting all claims and causes of action, including Avoidance Actions, and other rights, interests, and privileges respecting the Assets, and compromising and settling such claims, causes of action,

**Page 13 of 27** - DEBTOR'S PLAN OF LIQUIDATION (MAY 22, 2019)

**Tonkon Torp LLP**
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

rights, interests, and privileges; (d) reconciling Claims and resolving Disputed Claims;
(e) filing appropriate tax returns; and (f) taking such other actions as may be necessary or
appropriate in connection with any of the above or to otherwise effectuate this Plan.
Debtor may incur and pay any and all reasonable and necessary expenses in performing
the foregoing functions, and may hire agents and professionals to assist with the
foregoing functions.  On the Final Distribution Date, Debtor shall be deemed dissolved
under applicable law without the need for any corporate or other actions, consents, or
approvals other than filing articles of dissolution with the Oregon Secretary of State.  In
addition, on or promptly following the Final Distribution Date, Debtor may, without the
need for any further actions, consents, or approvals, dispose of or destroy any and all
records maintained by Debtor.

>     5.3.    Post-Effective Date Management; Plan Agent

>         5.3.1.    Plan Agent.  From and after the Effective Date, Debtor shall be
managed solely by the Plan Agent.  The Plan Agent will take over the duties performed pre-
Effective Date by Debtor.  The initial Plan Agent shall be The Mountain Group.  The
Mountain Group shall continue to serve as the Plan Agent until the earlier of (a) the date on
which the Plan has been fully effectuated and Debtor's affairs have been fully wound up or
(b) the date on which The Mountain Group resigns or is unable to serve as Plan Agent.

>         5.3.2.    Duties and Rights of Plan Agent.  The Plan Agent shall use its best
efforts to cause Debtor to fulfill all of its duties and obligations under this Plan.  Without
limiting the rights set forth in Section 5.3.1. above, the Plan Agent shall have broad and
exclusive power to manage Debtor.  The Plan Agent shall have full power, authority, and
responsibility to take any and all such actions as the Plan Agent, in its good faith discretion,
deems necessary or appropriate to cause Debtor to fulfill its duties and obligations under this
Plan.  In addition to all rights and powers given to the Plan Agent under this Plan, the Plan
Agent shall have all of the rights and powers given to directors and officers under Oregon

**Page 14 of 27** - DEBTOR'S PLAN OF LIQUIDATION (MAY 22, 2019)

**Tonkon Torp LLP**
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

**EXHIBIT 1**
**17 of 30**
Case 19-30223-tmb11    Doc 140    Filed 05/22/19

law, and shall have all rights and powers of a trustee appointed pursuant to Section 1104 of the Bankruptcy Code. Without limiting any rights the Plan Agent may have pursuant to law or this Plan, the Plan Agent is empowered, on behalf of Debtor, to (a) sell, hold, manage, administer, and distribute the Assets in accordance with this Plan or any Orders entered by the Court, and take such actions as may be necessary or appropriate to effect Distributions to be made by Debtor under this Plan or any Orders entered by the Court; (b) wind up any ESOP or 401(k) Plan and pay all fees and expenses associated therewith; (c) establish bank accounts; (d) engage and pay professionals, including attorneys, accountants, actuaries, appraisers, brokers, and others, to assist Debtor in fulfilling its obligations under this Plan; (e) object to Claims and resolve Disputed Claims; (f) terminate all benefit plans; (g) initiate and pursue all claims and causes of action retained by Debtor under this Plan (including any Avoidance Action), and compromise and settle such claims and causes of action; (h) obtain and pay for directors' and officers' liability insurance in such amounts and with such carriers as determined by the Plan Agent in its good faith discretion; (i) obtain and pay for liability insurance policies, including polices providing errors and omissions coverage (including "tail" coverage) to the Plan Agent and any agents employed by the Plan Agent or Debtor; (j) exercise, post-Confirmation, any post-Confirmation duties or obligations imposed on Debtor pursuant to any agreements entered into by Debtor in connection with the Case or any Orders entered by this Court, including any orders approving settlements with Debtor's lenders; and (k) exercise such other powers and take such other actions that the Plan Agent, in its discretion, deems reasonably necessary or appropriate to effectuate this Plan or Orders entered by this Court.

       5.3.3. <u>Compensation of Plan Agent</u>. The Plan Agent shall receive, as compensation for its services hereunder, reasonable fees based upon its customary hourly rates in effect when services are performed, plus reimbursement of reasonable out-of-pocket costs and expenses incurred in connection with performing such services. The fees, costs,

**Page 15 of 27** - DEBTOR'S PLAN OF LIQUIDATION (MAY 22, 2019)

**Tonkon Torp LLP**
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

Case 19-30223-tmb11    Doc 140    Filed 05/22/19

**EXHIBIT 1**
**18 of 30**

and expenses of the Plan Agent shall be paid by on a monthly basis in arrears out of the Assets.

5.3.4.   <u>Fees and Expenses of Agents and Professionals</u>.  From the Assets, the Plan Agent shall pay the reasonable fees and expenses of all professional persons and agents employed by the Plan Agent in connection with this Plan.  Any such professional person or agent seeking a payment from the Plan Agent shall submit an invoice to the Plan Agent, which (absent an objection by the Plan Agent), the Plan Agent shall promptly pay.  Any objection which cannot be resolved by the Plan Agent and the party seeking such payment shall be resolved by the Court.

5.3.5.   <u>Bond</u>.  Within 15 business days after the Confirmation Date, the Plan Agent shall obtain a fiduciary bond (or a substitute bond for any successor Plan Agent), evidence of which shall be filed with the Court and which shall remain in place until the resignation or removal of the Plan Agent or until the final Distribution Date.  The face amount of the bond shall at all times be in an amount no less than 125% of the total amount of Cash under the Plan Agent's control.  The cost of such bond shall be paid out of the Assets.

5.3.6.   <u>Standard of Care</u>.  The Plan Agent shall exercise the rights and powers granted to it by this Plan in the same manner, and use the same degree of care and skill in its exercise, as a prudent person would exercise and use under the circumstances in the conduct of his or her own affairs, having due regard for the purposes of this Plan.  The Plan Agent shall not be liable or responsible for any misconduct or negligence of any attorney, accountant, or other professional employed or selected by the Plan Agent.  The Plan Agent shall not be liable for any, and shall be discharged from all liability to, Debtor, all Creditors, and all Equity Interest holders for any and all acts or omissions of the Plan Agent, except for gross negligence or willful misconduct.

**Page 16 of 27** - DEBTOR'S PLAN OF LIQUIDATION (MAY 22, 2019)

**Tonkon Torp LLP**
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

Case 19-30223-tmb11    Doc 140    Filed 05/22/19

**EXHIBIT 1**
**19 of 30**

5.4.    Distributions by Plan Agent

5.4.1.    Form of Payments.  Distributions to be made under this Plan shall be made by check drawn on a domestic bank or by wire transfer from a domestic bank, at the sole election of the Plan Agent.

5.4.2.    Delivery of Distributions.  Except as otherwise agreed to by the Plan Agent in writing, Distributions to be made pursuant to this Plan may be delivered by regular mail, postage prepaid, in an envelope addressed as directed in a written request served on the Plan Agent, but if no such request is made, to the address shown in Debtor's Schedules, as they may from time to time be amended in accordance with Bankruptcy Rule 1009, or, if a different address is stated in a proof of claim duly filed with the Court, to such address stated in the proof of claim.

5.4.3.    Unclaimed Property.  During the Claiming Period applicable to any particular Distribution made pursuant to this Plan, Unclaimed Property with respect to such Distribution shall be distributed to the holders of Allowed Claims entitled thereto upon presentment to the Plan Agent of satisfactory proof of entitlement.  After the expiration of the Claiming Period (subject to the right of the Plan Agent, in its sole discretion, to waive the provisions of this sentence, in whole or in part):  (a) holders of Allowed Claims previously entitled to such Unclaimed Property shall no longer be entitled thereto; (b) such Claims shall be deemed disallowed for all purposes; and (c) the then-remaining Cash constituting Unclaimed Property with respect to such Distribution shall be redesignated as, and become, Available Cash (but without impairing the right of Debtor to use such redesignated funds to satisfy the costs of administering this Plan).

5.4.4.    Time Bar to Cash Payments.  Checks issued in respect of Allowed Claims shall be null and void if not negotiated within 90 days after the date of issuance thereof.  Any requests for reissuance of any check shall be made to the Plan Agent prior to the expiration of such 90-day period.  After such date (subject to the right of the Plan Agent,

**Page 17 of 27** - DEBTOR'S PLAN OF LIQUIDATION (MAY 22, 2019)

**Tonkon Torp LLP**
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440
Case 19-30223-tmb11    Doc 140    Filed 05/22/19

**EXHIBIT 1**
**20 of 30**

in its sole discretion, to waive the provisions of this sentence, in whole or in part), (a) the
holder of any such Claim who has failed to make a timely request for reissuance of such a
voided check shall not be entitled to any other or further Distribution under this Plan on
account of such voided check and (b) the Unclaimed Property held on account of such voided
check shall be redesignated as, and become, Available Cash (but without impairing the right
of Debtor to use such funds to satisfy the costs of administering this Plan).

5.4.5. <u>Minimum Distributions</u>. If any Distribution to be made to any
holder of an Allowed Claim under this Plan (including any Pro Rata Distribution) is $10 or
less, then, notwithstanding any contrary provision in this Plan, the Plan Agent shall not be
obligated to make such Distribution to such holder. Distributions withheld pursuant to this
section shall become unrestricted Available Cash (but without impairing the right of the Plan
Agent to use such funds to satisfy the costs of administering this Plan).

## SECTION 6
## TREATMENT OF EXECUTORY CONTRACTS

6.1. <u>General Rejection of Executory Contracts</u>. Except as otherwise
specifically provided in this Plan or in the Confirmation Order, effective as of the
Effective Date, all executory contracts of Debtor not previously rejected by operation of
law or by Court order (excluding only those that are assumed pursuant to Court order
entered prior to the Confirmation Date and those that are the subject of a motion to
assume filed prior to the Confirmation Date) shall be deemed to be automatically rejected
by Debtor as of the Confirmation Date. The Confirmation Order shall constitute a Court
order approving such rejections pursuant to the provisions of Sections 365 and 1123(b)(2)
of the Bankruptcy Code.

6.2. <u>Claims for Rejection Damages</u>. A Claim for damages arising by reason
of the rejection of an executory contract shall be classified and treated as a Class 4 Claim;
provided, however, that any such Claim shall be deemed disallowed, barred forever, and

**Page 18 of 27** - DEBTOR'S PLAN OF LIQUIDATION (MAY 22, 2019)

Tonkon Torp LLP
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

Case 19-30223-tmb11    Doc 140    Filed 05/22/19

**EXHIBIT 1**
**21 of 30**

1  not enforceable against Debtor or any property of the Estate unless a proof of claim

2  therefor is filed with the Court and served on Debtor within 30 days after the Effective

3  Date.

4  ## SECTION 7

5  ## EFFECT OF PLAN CONFIRMATION

6      7.1.   <u>Effect of Confirmation</u>. The effect of confirmation shall be as set forth in

7  Section 1141 of the Bankruptcy Code.

8      7.2.   <u>Revesting; Operation of Business</u>. Except as otherwise expressly

9  provided in this Plan, on the Effective Date all property and assets of the estate of Debtor

10  shall revest in Debtor, free and clear of all claims, liens, encumbrances, charges, and

11  other interests of Creditors arising on or before the Effective Date; and Debtor may

12  operate, from and after the Effective Date, free of any restrictions imposed by the

13  Bankruptcy Code or the Bankruptcy Court.

14  ## SECTION 8

15  ## RETENTION OF JURISDICTION

16      8.1.   <u>Jurisdiction of the Bankruptcy Court</u>. Notwithstanding entry of the

17  Confirmation Order, the Court shall retain jurisdiction of the Chapter 11 Case pursuant to

18  and for the purposes set forth in Sections 1127(b) and 1141-1146 of the Code to enforce

19  the provisions of this Plan and to ensure that the intent and purposes of this Plan are

20  carried out and given effect. Without limiting the preceding, the Court shall retain

21  jurisdiction to:

22          8.1.1.   Classify the Claim or interest of any Creditor, reexamine Claims or

23  interests that have been allowed for voting purposes, and determine any objections that may

24  be filed to Claims or interests;

25

26

**Page 19 of 27** - DEBTOR'S PLAN OF LIQUIDATION (MAY 22, 2019)

**Tonkon Torp LLP**
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

Case 19-30223-tmb11    Doc 140    Filed 05/22/19

**EXHIBIT 1**
**22 of 30**

8.1.2.   Determine requests for payment of Claims entitled to priority under Section 507(a) of the Bankruptcy Code, including compensation and reimbursement of expenses in favor of professionals employed at the expense of the Estate;

8.1.3.   Avoid transfers or obligations to subordinate Claims under Chapter 5 of the Bankruptcy Code;

8.1.4.   Approve the assumption, assignment, or rejection of an executory contract or unexpired lease pursuant to this Plan;

8.1.5.   Resolve controversies and disputes regarding the interpretation or enforcement of this Plan;

8.1.6.   Implement the provisions of this Plan and enter orders in aid of confirmation;

8.1.7.   Approve any settlements entered into by the Plan Agent;

8.1.8.   To the extent the Court has jurisdiction, adjudicate adversary proceedings and contested matters pending or hereafter commenced in the Chapter 11 Case; and

8.1.9.   Enter a final decree closing the Chapter 11 Case.

8.2.   <u>Failure of Bankruptcy Court to Exercise Jurisdiction</u>.  If the Bankruptcy Court abstains from exercising, or declines to exercise, jurisdiction over any matter arising under, arising in, or related to the Chapter 11 Case, this section shall not prohibit or limit the exercise of jurisdiction by any other court having competent jurisdiction with respect to such subject matter.

## SECTION 9

## ADMINISTRATIVE PROVISIONS

9.1.   <u>Bankruptcy Fees</u>.  Fees payable by Debtor under 28 U.S.C. § 1930, or to the Clerk of the Bankruptcy Court, will be paid in full in Cash on the Effective Date. After confirmation, Debtor shall continue to pay quarterly fees of the Office of the United

**Page 20 of 27** - DEBTOR'S PLAN OF LIQUIDATION (MAY 22, 2019)

**Tonkon Torp LLP**
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440
Case 19-30223-tmb11     Doc 140     Filed 05/22/19

**EXHIBIT 1**
**23 of 30**

States Trustee, and shall file monthly disbursement reports with the Office of the United
States Trustee and the Bankruptcy Court until this Case is closed by the Bankruptcy
Court, dismissed, or converted. This requirement is subject to any amendments to
28 U.S.C. § 1930(a)(6) that Congress makes retroactively applicable to confirmed
Chapter 11 cases.

9.2.    Modification of the Plan.  Debtor may alter, amend, or modify the Plan
pursuant to Section 1127 of the Bankruptcy Code and Bankruptcy Rule 3019 at any time
prior to the time the Bankruptcy Court has signed the Confirmation Order.  After such
time, and prior to the substantial consummation of the Plan, Debtor may, so long as the
treatment of holders of Claims and interests under the Plan is not adversely affected,
institute proceedings in Bankruptcy Court to remedy any defect or omission or to
reconcile any inconsistencies in the Plan, Disclosure Statement, or Confirmation Order,
and any other matters as may be necessary to carry out the purposes and effects of the
Plan.

9.3.    Revocation or Withdrawal of Plan

9.3.1.    Right to Revoke.  Debtor reserves the right to revoke or withdraw
the Plan at any time prior to the Effective Date.

9.3.2.    Effect of Withdrawal or Revocation.  If Debtor revokes or withdraws
the Plan prior to the Effective Date, then the Plan shall be deemed null and void.  In such
event, nothing contained herein shall be deemed to constitute a waiver or release of any
claims by or against Debtor, or to prejudice in any manner the rights of Debtor in any further
proceeding involving Debtor.

9.3.3.    Nonconsensual Confirmation.  Debtor may request that the
Bankruptcy Court confirm the Plan pursuant to Section 1129(b) of the Bankruptcy Code if
the requirements of all provisions of Section 1129(a) of the Bankruptcy Code, except
Subsection 1129(a)(8), are met.

**Page 21 of 27** - DEBTOR'S PLAN OF LIQUIDATION (MAY 22, 2019)

Tonkon Torp LLP
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

Case 19-30223-tmb11    Doc 140    Filed 05/22/19

EXHIBIT 1
24 of 30

9.3.4. <u>Conditions of Effectiveness.</u>  The Effective Date will not occur and the Plan will not become effective unless and until each of the following conditions has been satisfied or waived by Debtor:

        9.3.4.1.  The Confirmation Date has occurred;

        9.3.4.2.  No stay of the Confirmation Order is in effect;

        9.3.4.3.  The sale of the Bend Property has closed; and

        9.3.4.4.  The sale of Debtor's newspaper operations has closed.

9.3.5. <u>Compromise of Controversies.</u>  Pursuant to Bankruptcy Rule 9019, and in consideration for the classification, distributions, and other benefits provided under the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of all Claims or controversies that are resolved pursuant to the Plan.  The entry of the Confirmation Order shall constitute the Court's approval of each of the compromises and settlements provided for in the Plan, and the Court's findings shall constitute its determination that such compromises and settlements are in the best interests of Debtor.

## SECTION 10

## MISCELLANEOUS PROVISIONS

10.1. <u>Retention of Causes of Action.</u>  Debtor shall retain any and all claims and causes of action whatsoever (whether known, unknown, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, or undisputed, and whether asserted or assertable directly, indirectly, or derivatively, at law, in equity, or otherwise), including, but not limited to, all Avoidance Actions.  The Plan Agent shall have the discretion to pursue or not to pursue any claims or causes of action belonging to the Estate.

10.2. <u>Utility Deposits.</u>  All utilities holding a utility deposit obtained as a result of this Bankruptcy Case shall immediately after the Effective Date return or refund such utility deposit to Debtor.  At the sole option of Debtor, Debtor may apply any such utility

**Tonkon Torp LLP**
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

**EXHIBIT 1**
**25 of 30**

deposit that has not been refunded to Debtor in satisfaction of any payments due or to become due from Debtor to a utility holding such a utility deposit.

10.3.    Governing Law.  Except to the extent the Bankruptcy Code, the Bankruptcy Rules, or other federal laws are applicable, the laws of the State of Oregon shall govern the construction and implementation of the Plan, and all rights and obligations arising under the Plan.

10.4.    Withholding and Reporting Requirements.  In connection with the Plan and all instruments issued in connection therewith and distributions thereon, Debtor shall comply with all withholding, reporting, certification, and information requirements imposed by any federal, state, local, or foreign taxing authorities, and all distributions hereunder shall, to the extent applicable, be subject to any such withholding, reporting, certification, and information requirements.  Entities entitled to receive distributions hereunder shall, as a condition to receiving such distributions, provide such information and take such steps as Debtor may reasonably require to ensure compliance with such withholding and reporting requirements, and to enable Debtor to obtain the certifications and information as may be necessary or appropriate to satisfy the provisions of any tax law.

10.5.    Section 1146(c) Exemption.  Pursuant to Section 1146(c) of the Bankruptcy Code, the issuance, transfer, or exchange of any security under the Plan; or the execution, delivery, or recording of an instrument of transfer pursuant to, in implementation of, or as contemplated by the Plan; or the revesting, transfer, or sale of any real property of Debtor pursuant to, in implementation of, or as contemplated by the Plan; shall not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee.  Consistent with the foregoing, each recorder of deeds or similar official for any city, county, or governmental unit in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept

**Page 23 of 27** - DEBTOR'S PLAN OF LIQUIDATION (MAY 22, 2019)

**Tonkon Torp LLP**
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

1 such instrument without requiring the payment of any documentary stamp tax, deed
2 stamps, transfer tax, intangible tax, or similar tax.

3      10.6. <u>Severability</u>. In the event any provision of this Plan is determined to be
4 unenforceable, such determination shall not limit or affect the enforceability and
5 operative effect of any other provisions of this Plan. To the extent any provision of this
6 Plan would, by its inclusion in this Plan, prevent or preclude the Bankruptcy Court from
7 entering the Confirmation Order, the Bankruptcy Court, on the request of Debtor, may
8 modify or amend such provision, in whole or in part, as necessary to cure any defect or
9 remove any impediment to the confirmation of this Plan existing by reason of such
10 provision.

11      10.7. <u>Binding Effect</u>. The provisions of this Plan shall bind Debtor and all
12 holders of Claims and Equity Interests, and their respective successors, heirs, and assigns.

13      10.8. <u>Recordable Order</u>. The Confirmation Order shall be deemed to be in
14 recordable form, and shall be accepted by any recording officer for filing and recording
15 purposes without further or additional orders, certifications, or other supporting
16 documents.

17      10.9. <u>Plan Controls</u>. In the event and to the extent any provisions of this Plan
18 are inconsistent with the provisions of the Disclosure Statement, or any other instrument
19 or agreement contemplated to be executed pursuant to this Plan, the provisions of this
20 Plan shall control and take precedence.

21      10.10. <u>Effectuating Documents and Further Transactions</u>. Debtor shall execute,
22 deliver, file, or record such contracts, instruments, assignments, and other agreements or
23 documents, and take or direct such actions as may be necessary or appropriate to
24 effectuate and further evidence the terms and conditions of this Plan.

25      10.11. <u>Saturday, Sunday, or Legal Holiday</u>. If any payment or act under this
26 Plan is required to be made or performed on a date that is not a business day, then the

**Page 24 of 27** - DEBTOR'S PLAN OF LIQUIDATION (MAY 22, 2019)

**Tonkon Torp LLP**
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

Case 19-30223-tmb11   Doc 140   Filed 05/22/19

**EXHIBIT 1**
**27 of 30**

making of such payment or the performance of such act may be completed on the next
succeeding business day, but shall be deemed to have been completed as of the required
date.

10.12. <u>Timing of Distributions</u>. Notwithstanding anything to the contrary
herein, (a) any distribution required by this Plan to be made on the Effective Date in
respect of a Claim shall be made as soon as practicable after (but in any event within
30 days of) the later of (i) the Effective Date or (ii) the date on which such Claim
becomes Allowed and any other conditions to distribution with respect to such Claim
shall have been satisfied; and (b) any distribution required by this Plan or any instrument
issued pursuant to this Plan to be made on a date subsequent to the Effective Date shall
be made on the later of (i) such date or (ii) as soon as practicable after (but in any event
within 30 days of) the date on which the pertinent Claim becomes Allowed and any other
conditions to distribution with respect to such Claim shall have been satisfied.

10.13. <u>Final Order</u>. Any requirement in this Plan for a Final Order may be
waived by Debtor; provided, however, that nothing contained herein shall prejudice the
right of any party-in-interest to seek a stay pending appeal with respect to such Final
Order.

10.14. <u>Event of Default; Remedy</u>. Except as otherwise provided in this Plan or
in the Confirmation Order, in the event Debtor shall default in the performance of its
obligations under this Plan, and shall not have cured such default within 10 days after
receipt of written notice of default from the Creditor to whom the performance is due,
then such Creditor may exercise its remedies on default. An event of default occurring
with respect to one Creditor or Claim shall not be an event of default with respect to any
other Creditor or Claim.

10.15. <u>Amendments to Claims</u>. No Claim may be amended by the holder
thereof at any time after the date that is 30 days after the Effective Date (the "Claim

**Page 25 of 27** - DEBTOR'S PLAN OF LIQUIDATION (MAY 22, 2019)

**Tonkon Torp LLP**
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

Amendment Bar Date") other than to reduce the amount of the Claim, unless such period is extended by Court order on a motion filed with the Court and served on Debtor within such 30-day period. Objections to any Claim that is timely amended by the holder thereof after the Effective Date shall be filed no later than 60 days after proof of such amended Claim is filed with the Court.

10.16. <u>Setoff, Recoupment, and Defenses</u>. Nothing contained in this Plan shall constitute a waiver or release by Debtor of any rights of setoff or recoupment, or of any defense it may have with respect to any Claim (including, without limitation, rights under Section 502(d) of the Bankruptcy Code). Debtor may, but shall not be required to, set off against any Claim and the distributions to be made pursuant to this Plan in respect of such Claim, any claims of any nature whatsoever that Debtor may have against the holder of such Claim, but neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release of any such claim Debtor may have against such holder.

10.17. <u>No Retiree Benefits</u>. Debtor has no retiree benefit plan, fund, or program, as defined in Section 1114 of the Bankruptcy Code, for the purpose of providing or reimbursing payments for retired employees and their spouses and dependents, for medical, surgical, or hospital care benefits, or benefits in the event of sickness, accident, disability, or death under any plan, fund, or program (through the purchase of insurance or otherwise), and no such payments or benefits shall be made by Debtor pursuant to this Plan or otherwise.

10.18. <u>Computation of Time Periods</u>. In computing any period of time prescribed or allowed by this Plan, unless otherwise expressly provided herein, the provisions of Bankruptcy Rule 9006(a) shall apply.

10.19. <u>Severability</u>. In the event any provision of this Plan is determined to be invalid, void, or unenforceable, the Court may, upon the request of Debtor, alter such

**Page 26 of 27** - DEBTOR'S PLAN OF LIQUIDATION (MAY 22, 2019)

Tonkon Torp LLP
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

**EXHIBIT 1**
**29 of 30**

provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the provision held to be invalid, void, or unenforceable, and such provision shall then be applicable as altered.  Notwithstanding any such holding or alteration, the remainder of the provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired, or invalidated by such holding or alteration.

      10.20.   <u>Exhibits</u>.  Any Exhibits to this Plan are incorporated into and are a part of this Plan as if fully set forth herein.

      DATED this 22nd day of May, 2019.

WESTERN COMMUNICATIONS, INC.


By <u>*/s/ Elizabeth C. McCool*</u>
     Elizabeth C. McCool, Chairwoman

Presented by:

TONKON TORP LLP


By <u>*/s/ Michael W. Fletcher*</u>
   Albert N. Kennedy, OSB No. 821429
   Michael W. Fletcher, OSB No. 010448
   Of Attorneys for Debtor

**Page 27 of 27** - DEBTOR'S PLAN OF LIQUIDATION (MAY 22, 2019)

Tonkon Torp LLP
888 SW Fifth Ave., Suite 1600
Portland, OR 97204
503.221.1440

Case 19-30223-tmb11   Doc 140   Filed 05/22/19

**EXHIBIT 1**
**30 of 30**

# LIQUIDATION ANALYSIS

**REAL PROPERTY ASSETS:**

| Real Property: | Estimated Orderly Liquidation (listing price) | Estimated Chapter 7 Liquidation |
|---|---|---|
| 1777 SW Chandler Ave., Bend, OR | $18,000,000 | $16,200,000 |
| 1406 5th St., La Grande, OR | $625,000 | $562,500 |
| 226 N. 6th St., Redmond, OR | $315,000 | $283,500 |
| 507 Chetco Ave., Brookings, OR | $577,500 | $519,750 |
| 312 H St., Crescent City, CA | $230,000 | $207,000 |
| 205 Timbers Blvd., Smith River, CA | $319,000 | $287,100 |
| **REAL PROPERTY ASSETS TOTAL:** | **$20,066,500** | **$18,059,850** |

**PERSONAL PROPERTY ASSETS:**

| | | |
|---|---|---|
| Going concern value of newspaper businesses | $5,000,000 to 10,000,000 | $0.00 |
| Liquidation of A/R | N/A | $750,000.00 |
| **TOTALS:** | **$20,000,000 to $30,000,000** | **$18,809,850** |

It is unlikely that any unsecured claim will receive any distribution in the event of a Chapter 7 liquidation.

**EXHIBIT 2**

# CERTIFICATE OF SERVICE

I hereby certify that I served the foregoing **DEBTOR'S DISCLOSURE STATEMENT (MAY 22, 2019)** on the parties indicated as "ECF" on the attached List of Interested Parties by electronic means through the Court's Case Management/Electronic Case File system on the date set forth below.

In addition, I served the foregoing on the parties indicated as "Non-ECF" on the attached List of Interested Parties by mailing copies thereof in sealed, first-class postage prepaid envelopes, addressed to the parties' last-known address and depositing in the U.S. mail at Portland, Oregon on the date set forth below.

DATED this 22nd day of May, 2019.

TONKON TORP LLP

By /s/ Michael W. Fletcher
    Albert N. Kennedy, OSB NO. 821429
    Michael W. Fletcher, OSB No. 010448
    Attorneys for Debtor

000646/00045/9987525v5

**Page 1 of 1** - CERTIFICATE OF SERVICE

# LIST OF INTERESTED PARTIES

*In re Western Communications, Inc.*
**U.S. Bankruptcy Court Case No. 19-30223-tmb11**

## ECF PARTICIPANTS

- JONAS V ANDERSON    jonas.v.anderson@usdoj.gov
- MICHAEL W FLETCHER    michael.fletcher@tonkon.com, leslie.hurd@tonkon.com;spencer.fisher@tonkon.com
- SARAH FLYNN    sarah.flynn@usdoj.gov
- ALBERT N KENNEDY    al.kennedy@tonkon.com, leslie.hurd@tonkon.com;spencer.fisher@tonkon.com
- KATHYRN PERKINS    kathryn.e.perkins@usdoj.gov
- CRAIG G RUSSILLO    crussillo@schwabe.com
- BRAD T SUMMERS    summerst@lanepowell.com, docketing-pdx@lanepowell.com
- US TRUSTEE, PORTLAND    USTPRegion18.PL.ECF@usdoj.gov

## NON-ECF PARTICIPANTS

**TOP 20 UNSECURED CREDITORS**

Advantage Newspaper Consultants
501-B Executive Place
Fayetteville, NC 28305

Bank of America
800 Fifth Ave.
Seattle, WA 98104

Carter & Associates
POB 21444
El Cajon, CA 92021

Century Washington Center Inc
POB 700
Bend, OR 97709

Davis Wright Tremaine LLP
c/o Joseph VanLeuven
1300 SW Fifth Ave., #2400
Portland, OR 97201

Eastman Kodak Company Inc.
343 State St.
Rochester, NY 14650

First Interstate Bank
805 NW Bond St.
Bend, OR 97703

Grove Mueller Swank PC
POB 2122
Salem, OR 97308-2122

Harrigan Price Fronk & Co. LLP
2796 NW Clearwater Dr.
Bend, OR 97703-7008

Homeland Fireworks Inc
POB 7
Jamieson, OR 97097

Journal Graphics Inc
2840 NW 35th Ave.
Portland, OR 97210

Karnopp Petersen LLP
350 SW Bond St., #400
Bend, OR 97702

Newscycle Solutions Inc.
POB 851306
Minneapolis, MN 55485-1306

Oregon Web Press Inc.
263 29th Ave., SW
Albany, OR 97322

Pacific Power Inc
POB 26000
Portland, OR 97256

Page Cooperative Inc.
700 American Ave., #101
King of Prussia, PA 19406

Sacramento Bee
c/o Paul J. Pascuzzi
Felderstein Fitzgerald
  Willoughby & Pascuzzi LLP
400 Capitol Mall, #1750
Sacramento, CA 95814

Southern Lithoplate Inc.
POB 741887
Atlanta, GA 30374

Sun Chemical Inc
POB 2193
Carol Stream, IL 60132-2193

United Way of Deschutes County
POB 5969
Bend, OR 97708

**UCC PARTIES**

Hitachi Capital America Corp.
7808 Creekridge Circle, #250
Edina, MN 55439

Imaging Financial Services, Inc.
POB 35701
Billings, MT 59107

**PROPERTY TAXES**

Baker County Tax Collector
1995 3rd St., #140
Baker City, OR 97814

Curry County Tax Collector
POB 1568
Medford, OR 97501

Del Norte County Tax Collector
981 H St., #150
Crescent City, CA 95531

Deschutes County Tax Collector
POB 7559
1300 NW Wall St., #200
Bend, OR 97701

Tuolumne County Tax Collector
POB 3248
Sonora, CA 95370-3248

Union County Assessor/Tax Collector
1001 4th St., Suites A & B
La Grande, OR 97850

Yazoo County Tax Collector
POB 108
Yazoo City, MS 39194

**OTHER**

Andrews McMeel Universal
Andrews McMeelsynd/
  Universal Uclick
POB 843345
Kansas City, MO 64184-3345