Nathan Q. Rugg (*admitted pro hac vice*)
 Direct Dial: (312) 984-3127
 Facsimile: (312) 984-3150
 E-Mail: Nathan.Rugg@bfkn.com
Barack Ferrazzano Kirschbaum & Nagelberg LLP
200 W. Madison, Suite 3900
Chicago, IL 60606

Britta E. Warren
 503.224.5560 (p)
 503.224.6148 (f)
 bew@bhlaw.com
BLACK | HELTERLINE LLP
805 SW Broadway, Suite 1900
Portland, OR 97205

 Of Attorneys for Rhode Island Suburban Newspapers, Inc.

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF OREGON

| | |
|---|---|
| In re<br><br>Western Communications, Inc.<br><br>Debtor. | Case No. 19-30223-tmb11<br><br>**REQUEST FOR PAYMENT OF BREAK-UP FEE FROM PROCEEDS OF BEND SALE (EXPEDITED)**<br><br>**Hearing: July 29, 2019 at 1:30 p.m.** |

Rhodes Island Suburban Newspapers Inc. ("RISN" or "Buyer"), by and through its undersigned counsel, hereby requests payment of the "Break-Up Fee" arising from the Bend sale transaction, which sale is scheduled for hearing on July 29, 2019 at 1:30 p.m., for the following reasons:

**I.  INTRODUCTION**

1. RISN seeks approval of the Break-Up Fee it negotiated as part of the stalking horse offer it submitted for the "Bend Assets" (defined below). The purchase agreement between RISN and the Debtor guaranties a sale for the Bend Assets for a purchase price of $2.25 million and requires competing bidders to produce higher and better offers, including cash in the amount of $67,500 to pay the Break-Up Fee. The Debtor in fact received two

**Page 1 of 7** -  REQUEST FOR PAYMENT OF BREAK-UP FEE FROM SALE PROCEEDS OF BEND SALE (EXPEDITED)

Barack Ferrazzano Kirschbaum
& Nagelberg LLP
200 W Madison, Suite 3900
Chicago, IL 60606

Case 19-30223-tmb11    Doc 211    Filed 07/25/19

competing bids (both bids based on the form of RISN's purchase agreement) and will sell the Bend Assets for no less than $2.5 million. There are no objections to the Bend sale. Accordingly, in the event this Court approves a sale to a party other than RISN, the Break-Up Fee should be approved and paid from the sale proceeds.

## II. FACTUAL BACKGROUND

2. RISN and Western Communications, Inc., the debtor ("Debtor" or "Seller") in the above-captioned chapter 11 proceedings (the "Bankruptcy Case"), entered into that certain Bend Asset Purchase Agreement (the "APA"). The Debtor filed an executed copy of the APA with the Court on July 3, 2019 [Docket No. 194].

3. Under the APA, RISN offered to buy substantially all of the Debtor's assets related to "the printing, publishing and distributing of Seller's The Bulletin daily newspaper, Redmond Spokesman weekly newspaper, TMC weekly publication, Go! weekly entertainment tabloid, Bend Homes monthly vertical, Area 97 bi-monthly magazine and Pulse quarterly magazine and certain related websites" (collectively, the "Bend Business") for a cash purchase price of $2,250,000. (APA, pp. 1, 3).

4. RISN and the Debtor agreed the purchase offer would be subject to an auction process and agreed to certain conditions for such process to both (a) ensure that the Debtor obtained the highest and best price possible for the Bend Business, and (b) compensate RISN for setting a floor for the sale and guarantying a set amount of consideration for the sale. Among other things, as part the auction process, the parties agreed and the APA provides:

   a. **If Buyer is not the successful purchaser and an Alternative Transaction is approved by the Bankruptcy Court, Buyer will be entitled to a return of the Deposit and, subject to Bankruptcy Court approval, will be entitled to receive a cash payment in the amount of Sixty-Seven Thousand, Five-Hundred U.S. dollars ($67,500) (the "Break-Up Fee");**

   b. Competing bidders will be required to overbid as follows: The first competing bidder must bid an initial amount of at least One Hundred Thousand U.S. dollars

Page 2 of 7 - REQUEST FOR PAYMENT OF BREAK-UP FEE FROM SALE PROCEEDS OF BEND SALE (EXPEDITED)

Barack Ferrazzano Kirschbaum
& Nagelberg LLP
200 W Madison, Suite 3900
Chicago, IL 60606

Case 19-30223-tmb11    Doc 211    Filed 07/25/19

($100,000.00) in cash over the Purchase Price. Any subsequent bidder, including Buyer, must bid in bid increments of at least Fifty Thousand U.S. dollars ($50,000.00) over the most recently submitted bid. **Buyer shall be entitled to credit bid, at each round of the auction, the amount of the Break-Up Fee**;

c. Competing bidders must demonstrate the ability to pay the Purchase Price in cash at Closing; and

d. **Competing bidders (other than Buyer) will be required to deposit the sum of Sixty-Seven Thousand, Five Hundred U.S. dollars ($67,500) in cash (to cover the Break-Up Fee) and an additional deposit of 10% of their proposed purchase price**, and deliver to Seller a signed copy of this Agreement, marked to show such bidder's proposed changes, in order to confirm a commitment to proceed with the purchase.

(Collectively, the "Auction Process"). (APA, Art. 10).

5. The Debtor filed its sale motion for the Bend Business pursuant to the APA on June 28, 2019 [Docket No. 184] (the "Sale Motion"). Consistent with the Auction Process, the Sale Motion required that competing bids be submitted by July 15, 2019 (the "Overbid Date") and that such bids must exceed the consideration provided under the APA "by at least $100,000, and be on the same or more favorable terms to the estate." (Sale Motion, ¶9). In addition, the Debtor indicated that all expenses of the sale of the Bend Business would be paid from the sale proceeds. (Sale Motion, ¶11).

6. The Debtor filed that certain Notice of Overbids and Auction (Bend Bulletin) on July 22, 2019 [Docket No. 205] (the "Notice"). As set forth in the Notice, no party timely filed an objection to the sale of the Bend Business, and the Debtor received two qualified bids by competing bidders under the Auction Process and by the Overbid Date. (Notice, p.2).

7. The Debtor identified an overbid by East Oregonian Publishing Company (dba EO Media Group) as the highest and best bid pursuant to a purchase agreement attached to the Notice. EO Media Group's current bid includes a cash purchase price of $2,500,000 and additional consideration. (Notice, Ex. A, p 7).

Page 3 of 7 - REQUEST FOR PAYMENT OF BREAK-UP FEE FROM SALE PROCEEDS OF BEND SALE (EXPEDITED)

Barack Ferrazzano Kirschbaum
& Nagelberg LLP
200 W Madison, Suite 3900
Chicago, IL 60606

Case 19-30223-tmb11    Doc 211    Filed 07/25/19

8.      Based on the competing bids timely received by the Debtor under the Auction Process, the Debtor intends to hold an auction for the Bend Business immediately prior to the hearing on the Sale Motion (the "Sale Hearing").

**III.    ARGUMENT – SUPPORT FOR PAYMENT OF BREAK-UP FEE**

9.      Regardless of the outcome of the auction, the Debtor will obtain a purchase price for the Bend Business no less than $2,500,000, which is $250,000 greater than the guaranteed purchase price RISN provided under the APA. The Break-Up Fee thus represents less than 3% of the total consideration the Debtor will receive for the Bend Business. RISN has successfully acted as a catalyst or "stalking horse" to attract higher and better offers for the Bend Business, and thereby maximized revenue and value for the Debtor's estate. RISN therefore respectfully requests the Court approve the Break-Up Fee at the Sale Hearing.

10.     The Debtor and RISN negotiated the Break-Up Fee to induce RISN to submit its offer for the Bend Business within the time frame mandated by the Debtor's business circumstances. The proposed Break-Up Fee is fair and reasonable in relation to the competing Overbids received and thus maximized the benefit to the estate by providing an incentive to potential purchasers to expend the resources necessary to formulate offers for the Bend Business in excess of the RISN's offer. *See, e.g., In re Kirk Corp.*, No. 09 B 17236, 2009 WL 6769950, at *16 (Bankr. N.D. Ill. July 30, 2009) (approving break-up fee and overbid protection); *In re CXM, Inc.*, 307 B.R. 94, 103-04, 106 (Bankr. N.D. Ill. 2004) (awarding break-up fee and noting that it "makes economic sense" to establish overbid protections as well); *In re Kmart Corp.*, Case No. 02-B-02474 (Bankr. N.D. Ill. Aug. 29, 2002) (authorizing break-up fee and overbid protections).

11.     RISN expended time, effort, and expense to conduct due diligence and negotiate the APA. By guaranteeing a minimum sale price and allowing the Debtor to seek higher and better offers, RISN took the risk that "another party will come in and outbid [RISN] and all that time and money will have been spent for naught," *Beebe v. Pacific Realty*

Page 4 of 7 -   REQUEST FOR PAYMENT OF BREAK-UP FEE FROM SALE PROCEEDS OF BEND SALE (EXPEDITED)

Barack Ferrazzano Kirschbaum
& Nagelberg LLP
200 W Madison, Suite 3900
Chicago, IL 60606

Case 19-30223-tmb11    Doc 211    Filed 07/25/19

*Trust*, 578 F. Supp. 1128, 1150 n. 7 (D.Or.1984) (quoting A Leveraged Buyout: What It Takes, Business Week, July 18, 1983, at 194, 198). Because this risk is common among potential buyers in bankruptcy cases, "breakup fees are often part of the deal." *In re S.N.A. Nut Co.*, 186 B.R. 98, 101 (Bankr. N.D. Ill. 1995).

12. "Agreements to provide breakup fees or reimbursement of fees and expenses are meant to compensate the potential acquirer who serves as a catalyst or 'stalking horse' which attracts more favorable offers." *Id*.; *see also In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1992) (bidding incentive may "be legitimately necessary to convince a 'white knight' to enter the bidding by providing some form of compensation for the risks it is undertaking") (internal citation omitted); *In re Marrose Corp.*, Nos. 89 B 12171-12179 (CB), 1992 WL 33848 at *5 (Bankr. S.D.N.Y. 1989) ("[bidding incentives] are meant to compensate the potential acquirer who serves as a catalyst or 'stalking horse' which attracts more favorable offers").

13. In the bankruptcy context, the test for determining whether a proposed Break-Up Fee should be approved is whether it is in the best interests of the estate. *See S.N.A. Nut. Co.*, 186 B.R. at 104; *see also In re ASARCO, L.L.C.*, 650 F.3d 593, 600-03 (5th Cir. 2011); *In re Tiara Motorcoach Corp.*, 212 B.R. 133, 137 (Bankr. N.D. Ind. 1997) (adopting the standards set forth in *S.N.A. Nut Co.*); *In re Am. W. Airlines, Inc.*, 166 B.R. 908, 912 (Bankr. D. Ariz. 1994); *In re Hupp Indus., Inc.*, 140 B.R. 191, 196 (Bankr. N.D. Ohio 1992). In particular, a court should evaluate whether a break-up fee will maximize revenues and the value to be brought into the debtor's estate. *See S.N.A. Nut Co.*, 186 B.R. at 105-06; *Tiara Motorcoach*, 212 B.R. at 137.

14. The Break-Up Fee satisfies this standard. The primary circumstances compelling allowance of the Break-Up Fee have already occurred. RISN facilitated the commencement of the bidding process as quickly as possible, so that a transaction can be

Page 5 of 7 - REQUEST FOR PAYMENT OF BREAK-UP FEE FROM SALE PROCEEDS OF BEND SALE (EXPEDITED)

Barack Ferrazzano Kirschbaum
& Nagelberg LLP
200 W Madison, Suite 3900
Chicago, IL 60606

Case 19-30223-tmb11    Doc 211    Filed 07/25/19

consummated promptly considering the business circumstances facing the Debtor and its operations.

15. By offering the Break-Up Fee the Debtor was able to ensure the sale of the Bend Business to a contractually committed bidder, at a price the Debtor believed to be fair, while providing the Debtor with the potential of even greater benefit to its estate. The Break-Up Fee therefore should be approved. The Auction Process facilitated by RISN, its APA and the Break-Up Fee in fact produced higher and better offers, that will net the estate an amount greater than RISN's purchase price after payment of the Break-Up Fee.

## IV. REQUEST FOR EXPEDITED HEARING

16. The present motion relates directly to the Sale Motion, for which a sale hearing is scheduled for July 29, 2019 at 1:30 p.m. By this motion, RISN requests that any order approving the sale of the Bend Assets provide for the payment of the Break-Up, in cash, to RISN from the sale proceeds. The results of the auction are unknown as of the date of this motion. Accordingly, the RISN submits that this motion should be heard at the same time as the Sale Motion, and has filed this motion on an expedited basis.

17. Pursuant to LBR 7007-1(c) and 9013-1(a)(2), counsel for RISN has discussed the request for expedited relief with counsel for both the Debtor and its secured lender, Sandton Credit Solution Master Fund III, LP, whose liens are in excess of the proposed sale price. Neither party contests the request to have this matter heard on an expedited basis.

**WHEREFORE**, Rhodes Island Suburban Newspapers Inc. respectfully requests that this Court enter a sale order that includes payment of the Break-Up Fee, in cash, to RISN at the closing of the sale of the Bend Business, and granting such other and further relief as this Court deems just and proper.

Barack Ferrazzano Kirschbaum & Nagelberg LLP
200 W Madison, Suite 3900
Chicago, IL 60606

DATED this 25th day of July 2019.

BARACK FERRAZZANO KIRSCHBAUM & NAGELBERG LLP

By  /s/ Nathan Q. Rugg
Nathan Q. Rugg
200 West Madison Street, Suite 3900
Chicago, IL 60606
Telephone: (312) 984-3100
Email: nathan.rugg@bfkn.com

BLACK HELTERLINE LLP

Britta E. Warren, OSB No. 065441
805 SW Broadway Suite 1900
Portland, OR 97205
Telephone: (503) 224-5560
Email: bew@bhlaw.com

*Of Attorneys for Rhode Island Suburban Newspapers, Inc.*

Page 7 of 7 -   REQUEST FOR PAYMENT OF BREAK-UP FEE FROM SALE PROCEEDS OF BEND SALE (EXPEDITED)

Barack Ferrazzano Kirschbaum
& Nagelberg LLP
200 W Madison, Suite 3900
Chicago, IL  60606

Case 19-30223-tmb11    Doc 211    Filed 07/25/19

# CERTIFICATE OF SERVICE

I hereby certify that I served a true and correct copy of the foregoing **REQUEST FOR PAYMENT OF BREAK-UP FEE FROM SALE PROCEEDS OF BEND SALE** upon all ECF participants registered with the Court to receive electronic notice as of the date of the entry of this pleading electronically via CM/ECF System:

JONAS V. ANDERSON, Email: jonas.v.anderson@usdoj.gov
MICHAEL W. FLETCHER, Email: michael.fletcher@tonkon.com,
    leslie.hurd@tonkon.com;spencer.fisher@tonkon.com
SARAH FLYNN, Email: sarah.flynn@usdoj.gov
ALBERT N. KENNEDY, Email: al.kennedy@tonkon.com,
    leslie.hurd@tonkon.com;spencer.fisher@tonkon.com
KATHYRN PERKINS, Email: kathryn.e.perkins@usdoj.gov
CRAIG G. RUSSILLO, Email: crussillo@schwabe.com
BRAD T. SUMMERS, Email: summerst@lanepowell.com, docketing-pdx@lanepowell.com
US TRUSTEE, PORTLAND, Email: USTPRegion18.PL.ECF@usdoj.gov

A Supplemental Certificate of Service will be filed on July 26, 2019 to comply with LBR 7007-1(c) and 9013-1(a)(2).

DATED this 25th day of July, 2019.

BLACK HELTERLINE LLP

By: s/ Britta E. Warren
Britta E. Warren, OSB No. 065441
bew@bhlaw.com
Fax: (503) 224-6148
Of Attorneys for Rhode Island Suburban Newspapers, Inc.

Page 1 – CERTIFICATE OF SERVICE

1647676

**BLACK HELTERLINE LLP**
805 SW Broadway, Ste. 1900
Portland, OR 97205

Case 19-30223-tmb11    Doc 211    Filed 07/25/19